NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0576n.06

No. 14-4145

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Aug 14, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MICHAEL ARTHUR, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| AMERICAN SHOWA, INC., | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**BEFORE: GIBBONS and COOK, Circuit Judges; MURPHY, District Judge.**[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff Michael Arthur appeals the district court's grant of summary judgment in favor of his former employer, American Showa, Inc., on his claims brought under the Americans with Disabilities Act as amended (ADA) and Ohio law for failure to accommodate his disability and discriminatory discharge. Because Arthur cannot establish the *prima facie* case for either claim, we affirm the district court's decision.

I.

Arthur began working as a full-time production associate for American Showa, Inc. ("ASI") in March of 1999. Prior to his employment at ASI, Arthur was diagnosed with spina bifida occulta. According to the Mayo Clinic, spina bifida occulta is a birth defect that causes malformation of the spinal cord.

---

[*] The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

In early 2002, Arthur had surgery to fuse some of his spinal discs. Despite his surgery, he continued to have back problems and in 2003 he requested time off under the Family and Medical Leave Act. In 2004, Arthur requested that ASI accommodate his condition by reassigning him to a job that did not require bending or twisting. ASI sent Arthur to have an Independent Medical Examination (IME) performed by Dr. David Randolph. Dr. Randolph found that "it is unlikely that Mr. Arthur will ever be free of problems with his low [*sic*] back . . . [He] will likely have chronic low back pain and require chronic and permanent restrictions with respect to work activities. . . . It is highly unlikely that he will ever be able to return to unrestricted work activities." Dr. Randolph recommended a 20-pound lifting restriction and stated that bending, twisting and stooping should be limited to an occasional and non-repetitive basis.

To accommodate the restrictions imposed by Dr. Randolph, ASI reassigned Arthur to a calibration associate position in the quality department. Arthur worked in this position until 2011. Arthur does not allege that ASI discriminated against him or failed to accommodate him prior to his termination in 2011.

In January of 2009, due to an economic downturn, ASI embarked on a reduction in its workforce. From 2009 to 2011, ASI released 100 temporary employees and over 50 full-time employees. In late 2011, department managers were informed that due to budgeting constraints additional positions would have to be eliminated. Greg Harvey, Arthur's manager, used a matrix of objective criteria to determine who would be eliminated. Because Arthur was the least senior in the department and could be released with the least amount of disruption, Harvey ultimately selected Arthur for layoff.

On December 2, 2011, Arthur was informed of his termination pursuant to the reduction in force. Following Arthur's termination, Harvey learned of another employee who was laid off but was offered a manufacturing position because he used to work on the manufacturing floor. Since Arthur had also previously worked on the manufacturing floor, Harvey thought that, in the interests of fairness and consistency, Arthur should be presented with the same offer.

On December 5, 2011, Ginny Whiting, ASI's HR manager at the Blanchester plant, called Arthur to ask if he would be interested in a machining position on the rack line. Arthur asked Whiting why he could not bump one of the assembly associates who recently moved to machining and Whiting said it was not allowed. According to Whiting's notes taken during the conversation, Whiting then asked Arthur if he would be able to take a machining position with or without accommodation, to which Arthur responded "maybe." The notes also suggest that Arthur stated that his physician made his restrictions more restrictive. The conversation ended with Arthur saying he would think about the machining position. On December 8 and 9, Whiting called Arthur to follow up on his decision regarding the machining position and left voicemail messages on Arthur's cellphone. On December 9, Arthur met with Whiting at ASI and informed her that he decided not to accept the machining position. Following that meeting, Whiting sent Arthur a letter detailing the timeline of their discussions and reiterating that his job at ASI ended on December 2, 2011.

Arthur filed a charge of disability discrimination with the EEOC in July 2012. Following receipt of his right-to-sue notice, Arthur filed his complaint against ASI in the district court. He alleged that ASI violated the ADA and Ohio law by refusing to accommodate him and terminating him on account of his disability. ASI filed a motion for summary judgment and the district court granted that motion. Arthur's timely appeal followed.

II.

We review *de novo* a district court's grant of summary judgment. *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We view the facts, and the reasonable inferences to be drawn from those facts, in the light most favorable to the non-moving party, and we do not weigh the evidence or make credibility determinations. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013).

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Arthur claims that ASI discriminated against him by failing to provide a reasonable accommodation to allow him to continue working in a new position after his layoff and by terminating his employment.

A.

Arthur's claim of discriminatory discharge in violation of the ADA and Ohio law lacks sufficient evidentiary support to survive summary judgment.[1] In the absence of direct evidence of discrimination, courts analyze ADA discrimination claims following the familiar burden-shifting approach of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). To prove a *prima facie* case of disability discrimination, Arthur must show that (1) he is disabled; (2) he is otherwise qualified for the position with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) ASI knew or had reason to know of his disability; and (5) Arthur was replaced or his position remained open. *Id.* Under the ADA, the plaintiff's disability must be a "but for"

---

[1] As the elements of a disability claim are essentially the same under the ADA and the Ohio statute, we will address them together. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004).

cause of the adverse employment action. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014).

The *prima facie* framework is modified if an employee is discharged due to a reduction in force. In such a case, the plaintiff is not required to demonstrate the fifth prong of the *prima facie* framework because he is not replaced. *See Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir. 1999). Instead, the plaintiff must introduce "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990), *cert. denied,* 498 U.S. 878 (1990); *see also Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 420–21 (6th Cir. 1999).

ASI acknowledges that Arthur satisfies the second and third elements of his *prima facie* case. However, ASI argues that (1) Arthur does not meet the statute's meaning of disabled; (2) Harvey—the sole decisionmaker concerning Arthur's termination—was unaware of Arthur's alleged disability; and (3) Arthur cannot establish that ASI replaced him or held his position open.

Due to his spina bifida occulta, Arthur has had multiple surgeries. The collective impact of these surgeries has left Arthur substantially limited in several major life activities, including bending and lifting. *See* 42 U.S.C. § 12102(2)(A). These restrictions were not of a temporary nature, but were found by Dr. Randolph to be chronic and permanent. Thus, echoing the district court, we analyze Arthur's *prima facie* case under the assumption that Arthur is disabled within the meaning of the ADA.

Nevertheless, Arthur's *prima facie* case fails at the fourth step. While it is clear that ASI knew of Arthur's restrictions, and therefore his disability, "an employee cannot be considered to

have been fired 'on the basis of disability' unless the individual decision-maker who fired the individual had knowledge of that disability." *Nilles v. Givaudan Flavors Corp.*, 521 F. App'x 364, 368 (6th Cir. 2013) (collecting cases). In this case, because it is undisputed that Harvey was the sole decisionmaker regarding the reduction-in-force job eliminations within his department, the *prima facie* case requires that Harvey knew of Arthur's disability. Harvey, although aware that Arthur had "restrictions," was wholly unaware of the specifics of his restrictions or why these restrictions were imposed.

Arthur does not dispute that Harvey was ignorant of Arthur's disability. Rather, Arthur counters that his employment did not end until December 9, 2011, when the final termination letter was written by Whiting. Therefore, Arthur argues, it was Whiting and not Harvey who fired him, and Whiting knew that he was disabled prior terminating him.

This argument is unavailing. Arthur was unambiguously terminated on December 2, 2011. The relevant letter states "I regret to inform you that effective today, 12/02/2011, your position is being eliminated in accordance with American Showa, Inc.'s reduction in force process." (DE 20-1, Letter, Page ID 122.) Arthur's termination was not revoked merely because Whiting asked Arthur whether he would be interested in a machining position three days later. Indeed, as evidenced by the letter detailing the back-and-forth discussion between Whiting and Arthur, Arthur declined the machining area position. "Per [this] decision, [Arthur's] employment with [ASI] is ending effective 12/02/2011 due to job elimination as part of American Showa's reduction in force process." (*Id.*)

Despite Arthur's attempt to characterize the December 9, 2011 letter as the final termination letter, the evidence demonstrates that Arthur was terminated on December 2, 2011. The decision to terminate Arthur was made by Harvey, who undisputedly knew nothing about

Arthur's disability. Therefore, Arthur is unable to establish the fourth element of his *prima facie* case.

Arthur further argues that ASI's failure to transfer him in accordance with ASI policies before he was notified of his layoff on December 2, 2011, serves as circumstantial evidence of discrimination, fulfilling the fifth prong of the *prima facie* framework. Specifically, Arthur maintains that it is ASI's policy to offer hourly employees a position of a similar nature and pay before notifying them of a layoff. Indeed, LoAnn Burt, the top human resources official for the relevant factories did state that it was "typical" for the company to do so. While a deviation from, or selective enforcement of, a policy could serve as circumstantial evidence of discrimination, *see e.g., Wells v. New Cherokee Corp.*, 58 F.3d 233, 236–37 (6th Cir. 1995), it is not necessary to determine whether or not ASI's failure to transfer Arthur prior to his layoff amounted to circumstantial evidence of discrimination in the present case. As discussed above, Arthur is unable to prove that Harvey—the final decisionmaker in Arthur's termination—knew of Arthur's disability and is therefore unable to establish the *prima facie* case.[2]

Arthur additionally contends that the district court erred by finding that he failed to request a reasonable accommodation. Thus, the issues raised on appeal are whether Arthur requested a reasonable accommodation, and if so, whether ASI failed to engage in the interactive process.[3]

---

[2] Because we believe that Arthur is unable to meet his burden under the *prima facie* framework, we find it unnecessary to address Arthur's allegations of pretext due to ASI's alleged lack of an apparent objective reduction-in-force plan.

[3] ASI briefly argues that it had no duty under the ADA to accommodate Arthur since Arthur was technically no longer an employee of ASI. ASI cites to no legal authority to support this position and the Court can find none. On the contrary, the Supreme Court has determined that an employer's failure to rehire is potentially actionable under the ADA. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 48–52 (2003).

*i.*

To succeed on his failure-to-accommodate claim Arthur must show: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) ASI knew or had reason to know of his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 407 (6th Cir. 2014).[4]

While the ADA requires employers to reasonably accommodate their disabled employees, "it does not endow all disabled persons with a job . . . of their choosing." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 757 (6th Cir. 2015) (*en banc*). The plaintiff bears the "burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (*en banc*). Reasonable accommodations do not obligate employers to create new jobs or displace existing employees from their positions. *Thompson v. E.I. DuPont deNemours & Co.*, 70 F. App'x. 332, 336 (6th Cir. 2003). In this case, Arthur believes it would have been reasonable under the circumstances for him to trade positions with another employee because ASI retained the right to transfer employees at will. Though a transfer or reassignment to another position is recognized as one type of reasonable accommodation, the ADA does not refer to merely any position, but "a *vacant* position." 42 U.S.C. § 12111(9)(B) (emphasis added). Here, none of the positions amenable to Arthur's restrictions were vacant at the time he was offered a position.

---

[4]As already discussed, for the purposes of summary judgment Arthur has demonstrated that he has a disability. Moreover, ASI does not dispute the second or third element. Thus the analysis will focus on whether he requested a reasonable accommodation.

To circumvent this hurdle, Arthur argues that the facts of this case present those "special circumstances" referred to in *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 405 (2002). In *Barnett*, a U.S. Airways baggage handler injured his back and requested transfer to a mailroom position that recently had become available. *Id.* at 394. US Airways denied his request because, under its seniority policy, the company was required to award the position to a more senior employee. *Id.* at 395. The Supreme Court found that, despite the seniority system, a plaintiff may show that "special circumstances warrant a finding that . . . the requested 'accommodation' is 'reasonable' on the particular facts." *Id.* at 405. For example, a plaintiff may show that the employer frequently exercises its right to change the seniority system unilaterally. *Id.*

In this case, Arthur views the special circumstances as follows: (1) on December 5, 2011, ASI transferred over 50 production associates to machining positions at Arthur's plant after shutting down one of the production assembly lines; and (2) on that very same day Whiting offered Arthur a position on the rack line. Arthur contends that because these 50-plus employees all received "new jobs," Arthur's reassignment to a position within his restrictions would not have resulted in the termination, removal or displacement of any employee. Therefore, it would not have placed an undue hardship on ASI.

*Barnett*, however, is ill-suited to the present case. Though the Sixth Circuit has yet to expound upon the Supreme Court's discussion of "special circumstances," one thing is clear: *Barnett* dealt with the interaction of employers' seniority systems and the ADA in the context of *vacant* positions. *See id.* Here, it is undisputed that the positions Arthur desired were already occupied. At the time Arthur spoke with Whiting on December 5, 2011 about his job offer for a position on the rack line, most if not all of the other positions in machining were already filled by the transferred associates. Arthur even acknowledged in his deposition that in order to be placed

in one of the jobs he could do—ranking room, forklift and analysis associates—an employee would have to be transferred to another position.

The ADA "does not require an employer to reassign an employee to a position that is not vacant." *Smith v. Ameritech,* 129 F.3d 857, 867 (6th Cir. 1997). This is logical; disparities in performance between employees and the time lost amidst retraining make obligating an employer to trade employees' positions an unreasonable accommodation. Arthur has failed to demonstrate that any positions within his restrictions were vacant. Indeed, the record evidence indicates that there were no positions available that could accommodate his disability. Thus, Arthur's requested accommodation was objectively unreasonable.

Arthur further contends that the district court incorrectly refused to consider a portion of Arthur's declaration. In his declaration filed in opposition to ASI's motion for summary judgment, Arthur contends that during the conversation that took place on December 5th, Whiting told Arthur that he "would have to give up [his] restrictions." (DE 27-1, Arthur Decl., Page ID 335.) The district court declined to consider this statement because the court determined it an attempt to bolster Arthur's deposition testimony. While the district court's decision was in error, it does not change the ultimate outcome of the case.

"A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *see also Fair v. Prime Sec. Distrib., Inc.*, 134 F.3d 371, *2 (6th Cir. 1997) (per curiam) unpublished table decision) ("[W]e do not allow parties who have been deposed to create material fact issues simply by submitting later contradictory affidavits[.]"). Although Arthur's deposition testimony never mentioned Whiting's alleged statement that he would have to give up his restrictions, Arthur was never

10

asked to explain what was said in the December 5 conversation. Even Whiting's testimony does not contradict Arthur's affidavit. Whiting acknowledged that the contents of her note regarding her December 5 conversation with Arthur would not include "everything that could have been said that day." (DE 20, Whiting Dep., Page ID 88.)

In any event, even assuming that Whiting told Arthur that the rack line was the only job available and he would need to waive his restrictions to work it, Arthur's failure-to-accommodate claim still fails. Such a fact only bolsters ASI's position that there were no vacant jobs available that could accommodate Arthur's restrictions. It also reinforces ASI's argument that Arthur wanted the opportunity to replace, or "bump," an existing employee and reassign said employee to a different position.

*ii.*

Arthur also argues that ASI failed to engage in the interactive process in good faith in violation of the ADA. Arthur seeks to gloss over his own responsibility to request a *reasonable* accommodation. He places the burden on ASI to engage in the interactive process because Whiting knew of Arthur's restrictions. However, Arthur never triggered such duty because of his failure to request a reasonable accommodation in the first place.

The ADA's regulations indicate that, "[t]o determine the appropriate reasonable accommodation [for a given employee,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(*o*)(3). The purpose of the interactive process is to "identify the precise limitations resulting from the [employee's] disability and potential reasonable accommodations that could overcome those limitations." *Id.* However, if the employee never requests a reasonable accommodation the employer's duty to engage in the interactive process is never triggered. *See Lockard v. Gen. Motors Corp.*, 52 F.

App'x 782, 788 (6th Cir. 2002). Indeed, a court need not consider whether there has been a failure to engage in the interactive process when a plaintiff fails to meet his burden of showing that a position to accommodate him was vacant. *See Kleiber v. Honda of Am. Mfg., Inc.*, 420 F. Supp. 2d 809, 826 (S.D. Ohio 2006), *aff'd,* 485 F.3d 862 (6th Cir. 2007); *see also Ozlowski v. Henderson,* 237 F.3d 837, 840 (7th Cir. 2001). As already discussed, Arthur's requested accommodation was unreasonable because the positions he could perform were occupied, thus ASI's duty never arose.

Even assuming ASI's duty to engage in the interactive process was triggered, Arthur's claim still fails. "[T]he employer fails to participate in the interactive process only if, among other things, the employee can demonstrate that 'the employee could have been reasonably accommodated but for the employer's lack of good faith.'" *Breitfelder v. Leis*, 151 F. App'x 379, 386 (6th Cir. 2005) (quoting *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 320 (3d Cir. 1999)). Arthur has failed to sufficiently present another way ASI could have reasonably accommodated him. Moreover, once ASI indicated to Arthur that his requested accommodation would result in the bumping of other employees, *i.e.* undue hardship, ASI is not further "required to propose a counter accommodation in order to participate in the interactive process in good faith." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 203 (6th Cir. 2010).

## III.

For the foregoing reasons, we affirm the district court's decision.