NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0509n.06

Case No. 16-6675

| | | |
|---|---|---|
| UNITED STATES COURT OF APPEALS **FOR THE SIXTH CIRCUIT** | | **FILED** Aug 31, 2017 DEBORAH S. HUNT, Clerk |

JOSEPH TERRE,                                        )
                                                     )
        Plaintiff-Appellant,                         )
                                                     )          ON APPEAL FROM THE UNITED
                                                     )          STATES DISTRICT COURT FOR
v.                                                   )          THE WESTERN DISTRICT OF
                                                     )          TENNESSEE
                                                     )
DORSEY HOPSON, II, et al.,                           )
                                                     )
        Defendants-Appellees.                        )
                                                     )
                                                     )

---

BEFORE: SILER, CLAY, and WHITE, Circuit Judges.

**SILER**, Circuit Judge.     Joseph Terre, Jr., filed this action alleging claims of discrimination under the Americans with Disabilities Act (as amended), 42 U.S.C. § 12101 et seq. ("ADA") and the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA").  The district court granted summary judgment in favor of Defendants, Shelby County Schools Unified School District ("SCS") and superintendent Dorsey Hopson.  Terre appeals that ruling, arguing that he has exhausted his administrative remedies and properly set forth a prima facie case and evidence of pretext under both the ADA and ADEA.  For the following reasons, we affirm the district court's ruling regarding Terre's ADEA claim and reverse and remand to the district court Terre's ADA accommodation and disparate treatment claims.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2012, after having taught for many years at various locations, Terre was appointed as the economics teacher at Wooddale High School ("Wooddale"). He became certified to teach economics in or about February 2013, in addition to already being certified in English and history. Terre was a Career Level III and Professional Level teacher and was regarded as highly qualified in several subjects at the high-school level. He was not evaluated at Wooddale from 2010 to 2013, but he was evaluated in 2001 and 2005. He never received an unsatisfactory evaluation, nor did he incur formal discipline, throughout his teaching career.

In August 2013, at the beginning of the 2013-2014 school year, Terre maintained his full-time position as an economics teacher at Wooddale. His position consisted of teaching five economics classes and one sociology class per semester. On October 25, 2013, Terre went on approved Family Medical and Leave Act ("FMLA") leave. He asked for several extensions of this leave, and each extension was allowed following certification from Terre's health care provider.

In April 2014, Wooddale Principal Michael Kyle informed Terre that seven teachers would be excessed and that Terre's full-time economics position would be one of the positions excessed. Terre was seventy-one years old at that time. In his email to Terre, Kyle stated that "Quinn is taking the Economics Praxis in June and will hopefully pass it. If he doesn't, then I'll go back to square one."[1] Kyle stated that the excessing was due to budget cuts resulting from projected enrollments for the next year. Wooddale teachers in positions that were excessed received notice from the Human Resources Department, advising that if non-tenured

---

[1] Ryan Quinn, another teacher at Wooddale, was born in 1989, and he signed an employment contract with SCS on December 20, 2013. He was initially only certified to teach history, and he held an Apprentice Level Teacher's License while he was at Wooddale.

teachers did not find a new position before June 15, their contract would be terminated; Terre received this notice in May 2014.

In June, despite Terre's complaints that he could not be terminated while on medical leave, he received a non-renewal notice from Hopson, informing Terre that his contract was to be terminated effective June 30, 2014. However, after Terre's continued complaints to the Human Resources Department and the Labor Relations Department that his rights under the ADA were being violated by excessing his position while he was on medical leave, Terre was informed that his contract would not be terminated and that he would be allowed to find another position within the school system following his leave. Terre was to be considered an active employee on leave until such time.[2]

In August, after having been advised that he was not terminated, Terre filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") based on disability and age discrimination. September, Terre submitted documentation from his health care provider that he could return to work and a "Reinstatement Form," which Human Resources had informed Terre he needed to submit to approve his return to work and be referred to the Strategic Teacher Recruitment and Staffing office regarding placement. Terre was officially cleared to return to work in October.

During the 2014-15 school year, due to Quinn's initial failure to pass the Praxis economics exam, economics courses at Wooddale were spread out among three existing teachers who also taught other subjects. teacher at Wooddale was certified to teach economics until Quinn passed the Praxis in October and earned certification in February 2015.

---

[2] At this point, Terre's leave was set to expire in August 2014, although his leave was later extended until October 2014.

During this time period, the Human Resources Department assisted Terre in trying to find another position.[3] SCS has the power and authority to reassign a teacher to another position at a different school operated by SCS, and in December, Terre received an offer for a teaching position at Manassas High School. He declined the position because he did not believe it would be a permanent position and because he believed that his requests for various accommodations would not be honored.

In February 2015, Terre requested a Right to Sue letter from the EEOC, and the EEOC issued a Notice of the Right to Sue letter in June. Terre then filed this lawsuit, and the district court granted summary judgment for the Defendants in October 2016.

## ANALYSIS

### I.     Standard of Review

We "review a [district court's] grant of summary judgment de novo, construing the evidence and drawing all reasonable inferences in favor of the nonmoving party." *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

### II.    ADEA Claim

The ADEA states that "[i]t shall be unlawful for an employer-- . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may bring an age discrimination claim by either showing direct evidence of discrimination or through the use of circumstantial evidence. *See Martin v.*

---

[3] The parties dispute the level of assistance provided by Defendants to Terre and whether Defendants made a good faith effort to assist Terre. Terre contends that he applied for both teaching and non-teaching positions and had several interviews but did not receive an offer of employment until December 2014, and that the offer was not made in good faith. In its response to the EEOC charge, SCS claimed that Terre remained its employee and that when he was cleared to return to work on October 13, 2014, it sought to place him in a vacant position and "recently placed him" in an economics position at Manassas High.

*Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008). Terre does not allege any direct evidence of age discrimination, so we must look at circumstantial evidence and apply the *McDonnell Douglas* burden-shifting framework. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570-74 (6th Cir. 2003). Under this analysis, the employee first has the burden to prove a prima facie case. *Id.* at 574. If he succeeds, the employer must show a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If a satisfactory response is made, the employee has the burden to rebut this reason by proving that it was merely pretext for age discrimination. *Id.* Ultimately, this requires showing by a preponderance of the direct or circumstantial evidence that "but for" his age, the employee would not have suffered the adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

## A. Prima Facie Case

To make out a prima facie case of age discrimination using circumstantial evidence, the employee must show that he (1) is a member of the protected class; (2) was subject to an adverse employment action; (3) was qualified for the position he held; and (4) was replaced by someone outside the protected class. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009). In instances of a reduction in force, however, the final prong is slightly different, as the employee must instead show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

In this case, it is undisputed that Terre was disabled and was qualified for his position as a full-time economics teacher. The district court found, over Defendants' objection, that Terre suffered an adverse employment action when Terre did not have a job to return to when his leave ended. As it is not disputed that there was a reduction in force, the issue on appeal is the district

court's finding that Terre was not singled out due to his age. Such a showing could be made if Terre provides evidence that he

> possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff. Alternatively, a plaintiff could show that the employer made statements indicative of a discriminatory motive . . . . The guiding principle is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age.

*Barnes*, 896 F.2d at 1466; *see also Gragg v. Somerset Tech. Coll.*, 373 F.3d 763, 768 (6th Cir. 2004). Here, there are no statements regarding Terre's age, but Terre is able to show that he is more qualified than a similarly situated teacher.

The district court found that because Terre was the only economics teacher at Wooddale, he and Quinn were not in the same position. However, both were teachers at Wooddale and both taught in the Social Studies Department and would be able to teach additional subjects if they passed the Praxis exam. Terre's duties as a full-time economics teacher could, and were, absorbed by the other teachers, including Quinn. Thus, Quinn's and Terre's positions are similar. Additionally, Terre also taught for much longer than Quinn, received satisfactory reviews, has achieved the Career Level III rating, and is qualified at the Professional Level. Quinn is a new teacher and is still at an Apprentice level. Due to Terre's experience, he is able to show his qualifications for the position are stronger than Quinn's, and he succeeds in presenting his prima facie case.

## B. Legitimate Non-discriminatory Reason and Pretext

The next step is whether Defendants provided a "legitimate nondiscriminatory reason" for the adverse action. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010). Here, SCS argues that it needed to eliminate seven teaching positions because of "budgeting constraints" and found that Terre's economics position could be absorbed by other

teachers and thus could be excessed. SCS thus meets its burden of showing a legitimate nondiscriminatory reason for the elimination of Terre's position.

We must now evaluate whether Terre showed pretext. Terre points out that Quinn failed the Praxis exam twice and argues that was the only reason the economics classes were spread between multiple teachers, as Kyle's original plan was for Quinn to take over Terre's classes, which is not in accordance with SCS's protocol for excessing teachers. He also brings up the fact that SCS did not place Terre in any of the vacant positions he applied for and that those positions were filled with younger individuals.

It is not necessarily unreasonable for a school to excess its full-time economics teacher due to budgetary constraints when, as in this case, it is able to divide the teacher's classes among other teachers and provide sufficiently for the school's programming needs. Similarly, the fact that the applicants selected to fill other vacant positions for which Terry applied are younger than he is does not in and of itself show that his age was a factor in the decision to eliminate his position. As mentioned above, Terre points to no statements or other actions that address his age. Any arguably discriminatory comments made by Kyle correlate to Terre's ADA, not ADEA, claim. Accordingly, Terre has not shown "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465.

## III. ADA Claims

Terre brings two claims under the ADA. He argues (1) that he was denied reasonable accommodations and (2) that he was subject to disparate treatment. The ADA states in relevant part that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of

employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). SCS does not dispute that it is a covered employer. The ADA also requires use of reasonable accommodation unless it would pose an undue hardship to the employer. Reasonable accommodations may include

> **(A)** making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> **(B)** job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

*Id.* § 12111(9).

### A. Failure to accommodate claim

The district court found that Terre did not exhaust his administrative remedies with regard to his reasonable accommodation claim. Exhaustion of administrative remedies is a condition precedent to bringing suit claiming a violation of the ADA. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). This means an employee must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discrimination, or within 300 days if the employee instituted proceedings with state or local agencies, 42 U.S.C. § 2000e-5(e), and he must receive a right-to-sue letter from the EEOC before filing suit. "A complainant need not attach the correct legal conclusion to allegations in the charge, conform to legal technicalities, or use the exact wording which might be required in a judicial pleading." *Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853 (6th Cir. 2000) (internal quotation marks omitted).

Terre's charge with the EEOC contained the following allegation:

On or about October 1, 2009, I began working for the above named employer. On October 3, 2013, I was placed on FMLA due to my disability. On March 24, 2014, I requested extended leave as an accommodation to my disability which was granted until August 1, 2014. On April 15, 2014, I received an email from Michael Kyle, Principal stating my position was being replaced by Ryan Quinn. On or about June 10, 2014, I received a letter from Dorsey Hopson terminating my employment. I believe I have been discriminated against because of my age (71) and disability in violation of the Age Discrimination in Employment Act of 1967, as amended (ADEA) and in violation of in violation of [sic] the Americans with Disabilities Act Amendments Act (ADAAA) 2008.

On the form, he checked the boxes for age and disability discrimination. He indicated that the latest date of discrimination was June 30, 2014, the date that employment contracts for non-tenured teachers without a position for the upcoming school year ended. He did not check the box for continuing action.

The district court divided Terre's claims into a pre-June 30 claim for forced FMLA leave and a post-June 30 claim dealing with Terre's challenges to finding an alternative position, and we will analyze his claims using that framework.

### 1. Pre-June 30, 2014 Claim

Terre argues the district court erred when it determined that the only pre-June 30 accommodation claim that was made involved Terre being forced to take FMLA leave. In his brief, Terre contends that his claim was that SCS took away his job while he was using approved leave and, therefore, negated his right to a reasonable accommodation by making the accommodation—the leave—ineffective. Defendants argue that such a claim cannot be supported by an investigation into the charge.

In his amended complaint, Terre stated the following was an alleged violation of the ADA:

Defendant's multiple failure(s) to engage in an interactive process, in good faith, with Plaintiff on how to implement or effect appropriate reasonable

accommodations, including but not limited to Defendant's unilateral termination of an ongoing reasonable accommodation (leave) and termination of Plaintiff by refusing to return Plaintiff to his position or a substantially similar position.

This supports Terre's assertion that his accommodation claim was not forced FMLA leave but that he was granted an accommodation which was then made ineffective due to his position being excessed. Thus, we must now address whether this claim was fully exhausted.

It is undisputed that Terre's disparate treatment/termination claim was exhausted, and generally, "[a] termination claim differs in kind and date from an accommodation claim." *Jones*, 209 F.3d at 854. In this case, however, Terre's disparate treatment and pre-June 30 accommodation claims, although separate and distinct, were both exhausted through the same language in the charge. The charge makes clear that Terre was on approved leave, requested more approved leave as an accommodation, and was on such leave when excessed. As such, his claim that he was excessed while on leave, nullifying his accommodation and leaving him without a replacement accommodation, is arguably apparent on the face of the charge. Even if not, an investigation into the termination would lead the EEOC to look into the leave situation and learn that Terre was excessed while being accommodated. For these reasons, we find that Terre exhausted his administrative remedies regarding his pre-June 30 accommodation claim.

### 2. Post-June 30, 2014 Claim

The next issue is the claim for failure to accommodate after June 30, 2014, the date Terre listed as the last date of discrimination on the charge. Terre argues that Defendants had a "continuing duty to accommodate [his] disability," and an EEOC investigation into the claim in his charge that he was wrongly terminated would have led to an investigation into his allegations that Defendants did not reasonably accommodate his disability after returning from leave. The district court found this claim was not exhausted, but in doing so, the court relied on its finding

that Terre had not exhausted his pre-June, 30 2014, accommodation claim. The analysis changes now that we have determined Terre exhausted his earlier accommodation claim. Terre's claim that he was not accommodated when he returned to work is an extension of his claim that his accommodation of protected leave was nullified when he was excessed. For this reason, we find that Terre has exhausted his administrative remedies on his ADA accommodation claim and remand the claim to the district court to analyze the claim in the first instance.

## B. Disparate Treatment

Terre also brings a disparate treatment claim under the ADA. Similar to his ADEA claim, we analyze his ADA disparate treatment claim using the *McDonnell Douglas* framework. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). The first step is for the employee to make out a prima facie case. This requires the employee to show that

> (1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Id.* (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)). As this case involves a reduction in force, there is again a different pleading standard for the prima facie case. *See Arthur v. Am. Showa, Inc.*, 625 F. App'x 704, 707 (6th Cir. 2015). "[T]he plaintiff is not required to demonstrate the fifth prong of the *prima facie* framework because he is not replaced. Instead, the plaintiff must introduce additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.* (citations omitted). If the employee makes out a prima facie case, the burden shifts to the employer to show a legitimate non-discriminatory reason for the discharge. *Whitfield*, 639 F.3d at 259-60. If the employer succeeds, the employee must then

prove that the employer's explanation is pretextual. *Id.* As with an ADEA claim, the employee must show that the disability was a but-for cause of his discharge. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012).

### 1. Prima Facie Case

The district court first found that Terre failed to make out a prima facie case. There is no dispute that Terre was disabled within the meaning of the ADA and that Defendants knew he was disabled. The district court also found there was an adverse action and that although the evidence was slight, a jury could find that Kyle singled out Terre due to his disability when deciding which position to excess. As the above findings are not at issue on appeal, the only part of the prima facie test that we must now consider is whether Terre was qualified for the job. The district court found, and Defendants argue, that Terre was not qualified because he could not meet the attendance requirements of the job. This is because at the time Terre's position was excessed, he was on medical leave and had not been released to go back to work, and at the time he filed his EEOC charge, he had not been scheduled to return to work. Terre disputes this finding, arguing that he was on protected medical leave and thus cannot be found unqualified due to that protected status.

To succeed, Terre must show that he is otherwise qualified for the position, with or without reasonable accommodation. Approved medical leave may be a reasonable accommodation and an inability to work while on such leave does not mean that an individual is automatically unqualified under the ADA. *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 782 (6th Cir. 1998) ("The presumption that uninterrupted attendance is an essential job requirement improperly dispenses with the burden-shifting analysis set forth in *Monette*.").

Terre's leave began October 25, 2013, and he requested and was granted extensions of his leave, which ultimately concluded on October 13, 2014. Terre made requests to communicate with SCS before filing his EEOC charge, and he attempted to find another position once he was cleared to go back to work. It was apparent that Terre intended to return to work, and he was not requesting an accommodation in terms of a flexible schedule when he returned. Rather, his accommodation was taking approved leave and properly applying for extensions of such leave. He did not fail to communicate or follow policy. Thus, we find that Terre was qualified at the time of the adverse action and successfully makes out a prima facie case.

### 2. Legitimate Non-discriminatory Reason and Pretext

The next step is whether the employer offered a legitimate and non-discriminatory reason for the adverse action. In this case, the offered reason is a reduction in force, which as discussed above, meets Defendants' burden. The burden then shifts back to Terre to show that the reduction in force is only pretext for discrimination based on his disability, and that "but for" his disability, he would not have suffered the adverse employment action.

The evidence of pretext in this claim is very similar to the ADEA claim; however, a key difference is that there are comments by Kyle regarding Terre's health. Kyle told Quinn to look into getting an economics certification because he was not sure about Terre's health or whether Terre's hip was "rehabilitated" enough for him to return to Wooddale. Specifically, Quinn explained that Kyle told him, "I'm not sure about Dr. Terre's health and so he's like we need somebody to do economics. So he asked me . . . ." Kyle also emailed Terre about the possibility of teaching from a wheelchair, stating that "I don't think teaching from a wheelchair is an option if you think back to the difficulty that Minton had but that is your call too. If you can do it, do it regularly, effectively, and successfully then I am all for it." These comments suggest that

Terre's health was an issue when Kyle made the decision to excess Terre's position. Additionally, Terre points to the SCS guidelines about staffing decisions by principals.[4] SCS is unable to show why it chose to excess Terre's position instead of Quinn's when both could have taught the same economics and history classes, and Terre had taught for a longer period than Quinn. Combined with the comments about his health and disability, Terre succeeds in showing that there is a genuine dispute of material fact on the issue of pretext. Accordingly, this claim is remanded to the district court for a fact-finding determination.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

---

[4] Below is the procedure, not disputed for purposes of summary judgment, upon which Terre relies:

Principals "must ensure that they have certified teachers in their building there to teach and to make sure that they are, that they have the right teachers who can continue their program." There are exceptions, if for example, a principal for a high school still "may not be able to complete a master schedule to make sure all kids get the required credits for graduation" meaning a school may be allocated 10 teachers but due to requirements of graduation that may have to do 12. Further, for curriculum reasons, a principal may excess a higher performer if she can "run the schedule and offer the type of courses with fewer people. "[SCS] principals are having to do more with less, year after year after year." Therefore, Defendant advises principals they may excess a Level 5 teacher who only teaches English, if that means keeping a Level 4 teacher who teaches English and Math.