**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| KIMBERLY DOVE | Case No. 2019-00969JD |
| Plaintiff | Judge Patrick E. Sheeran |
| v. | <u>DECISION</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff brought this action alleging failure-to-accommodate discrimination and assault and battery claims against Defendant. The case was tried before a Magistrate. On December 21, 2022, the Magistrate issued a Decision, in which he recommended judgment in favor of Defendant.

{¶2} On January 4, 2023, Plaintiff filed Objections to the Decision of the Magistrate. On January 13, 2023, Defendant filed a Motion for Leve to File, Instanter, Response to Plaintiff's Objections to the Decision of the Magistrate. Plaintiff's Objections are now before the Court for consideration. As an initial matter, Defendant's Motion for Leave is GRANTED and the Court will consider Defendant's Response as well. For the reasons set forth below, the Court will overrule Plaintiff's Objections, in part, and sustain Plaintiff's Objections, in part.

**Standard of Review**

{¶3} "A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision * * *." Civ.R. 53(D)(3)(b)(i). Objections "shall be specific and state with particularity all grounds for objection." Civ.R. 53(D)(3)(b)(ii). "An objection to a factual finding, whether or not specifically designated as a finding of fact * * *, shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding * * *." Civ.R. 53(D)(3)(b)(iii).

**{¶4}** The court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). In reviewing the objections, the court does not act as an appellate court but rather conducts "a de novo review of the facts and conclusions in the magistrate's decision." *Ramsey v. Ramsey*, 10th Dist. Franklin No. 13AP-840, 2014-Ohio-1921, ¶ 16-17. However, "[i]f an objecting party fails to submit a transcript or affidavit, the trial court must accept the magistrate's factual findings and limit its review to the magistrate's legal conclusions." *Triplett v. Warren Corr. Inst.*, 10th Dist. Franklin No. 12AP-728, 2013-Ohio-2743, ¶ 13. "Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification." Civ.R. 53(D)(4)(b).

**Factual Background and Procedural History**

**{¶5}** Plaintiff, Kimberly Dove, was formerly employed as a chaplain with Defendant, Ohio Department of Rehabilitation and Correction (ODRC), at its Lebanon Correctional Institution. For a period, former Deputy Warden Marva Allen was Plaintiff's direct supervisor. On Thursday, September 20, 2018, Allen pushed Plaintiff, without consent, into a hallway where OC (oleoresin capsicum) or pepper spray had been deployed. Plaintiff was affected by the pepper spray, causing her to choke. She responded to the shove by stating "This is how you train people?" Plaintiff filed an incident report and soon after spoke with incoming Warden Chae Harris regarding the incident. Warden Harris was aware of prior complaints against Allen. By Monday, September 24, 2018, after learning of the incident, Warden Harris had reviewed the security footage of the incident, opened a formal investigation, reassigned another deputy warden to oversee Plaintiff and the chapel and chaplain services, and ordered Allen to stay away from Plaintiff. Even though ordered to stay away from Plaintiff, Allen had visited the chapel, parked near Plaintiff, and even came into direct contact with her in the head of human resources, Chris Brown's, office. It was not until March 4, 2019, that Director Annette Chambers-Smith issued Allen a two-day paid working suspension due to the incident after reviewing a written conclusion of the incident and viewing the security camera footage. Chambers-Smith did not know about the stay away order or Allen's violations. Moreover, or possibly

as a result of that lack of knowledge, Chambers-Smith did not conduct any further investigation into the incident before issuing the *brief paid* suspension.

{¶6} Plaintiff initiated her period of disability leave soon after the incident on September 28, 2018.  While on disability leave, Plaintiff started treating with a psychiatrist who diagnosed her with major depression and acute stress disorder.  These diagnoses lead to the psychiatrist supporting Plaintiff's leave as Plaintiff was unable to work.  Plaintiff communicated to her ODRC contact that she could return to work if either she or Allen were moved to a different facility.

{¶7} In December 2018, Plaintiff applied for vacant chaplain position with ODRC's Northeast Reintegration Center.  Hiring Manager Sherri Pennington stated that this was a SEIU 1199 collective bargaining position.  Another ODRC chaplain with more seniority, John Tate, also applied for this position. Plaintiff did not get the position because Tate had more seniority under the collective bargaining agreement, and thus, absent a showing that Plaintiff was far more qualified for the position (which she did not do), he had to be offered the position ahead of Plaintiff.

{¶8} In January 2019, ODRC held a hearing to determine whether Plaintiff would be subject to an involuntary disability separation.  The separation was based on her continued inability to work and her psychiatrist's written findings that Plaintiff was unable to perform her job duties until at least April 1, 2019.  Plaintiff was placed on involuntary disability separation, which reflects in the ODRC employee file as a termination of employment.  Plaintiff had the ability to apply for reinstatement within two years from the date she was no longer in active work status.

{¶9} In the fall of 2019, Plaintiff applied for a vacant chaplain position at Chillicothe Correctional Institution.  Plaintiff and a contract chaplain were both interviewed for the position.  Pennington stated that Plaintiff had the seniority of an external candidate because of the involuntary disability separation.  During the hiring process, Plaintiff did not communicate to the hiring committee and Chillicothe or her contacts with Lebanon or ODRC regarding her application and prior disability leave and involuntary disability separation.  Plaintiff was not hired for the position.

{¶10} Plaintiff filed this case in September 2019 alleging assault and battery claims against ODRC.  Plaintiff then filed an Amended Complaint in March 2020 adding failure-

to-accommodate disability discrimination claims. After presentation of the evidence at trial, the Magistrate found that ODRC did not fail to accommodate Plaintiff as she did not make requests for reasonable accommodations and ODRC did not ratify Allen's assault and battery. Accordingly, the Magistrate recommended that judgment on all claims be entered in favor of Defendant.

**Plaintiff's First Objection and Second Objection**

{¶11} Plaintiff objects to the Magistrate's conclusion that there was no disability discrimination because Plaintiff's requests for transfer to two other facilities did not constitute reasonable accommodations. Plaintiff's first objection relates to a potential transfer to a vacant position at ODRC's Northeast Reintegration Center. Plaintiff's second objection relates to a potential transfer to a vacant position at ODRC's Chillicothe Correctional Institution.

{¶12} "Employees can prove discrimination in two ways, either directly or indirectly, and each has its own test." *Blanchet v. Charter Communications, LLC*, 27 F.4th 1221, 1227 (6th Cir.2022). "Since failure to accommodate is expressly listed in the Act's definition of disability discrimination, *see* 42 U.S.C. § 12112(b)(5)(A), 'claims *premised* upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination.'" *Id.*, quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir.2007). The direct evidence framework under which plaintiff's failure to accommodate claim is analyzed requires her to "establish that (1) she 'is disabled,' and (2) that she is '"otherwise qualified" for the position despite * * * her disability: * * * (c) with a proposed reasonable accommodation.'" *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 417 (6th Cir.2021), quoting *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 417 (6th Cir.2020), quoting *Kleiber* at 869.

{¶13} Ohio employers are required to make reasonable accommodations. *See* 42 U.S.C. § 12112(b)(5)(A); R.C. § 4112.02(A)(13); O.A.C. § 4112-5-08(E)(1). Plaintiff "bears the initial burden of suggesting an accommodation and showing that the accommodation is objectively reasonable." *Nighswander v. Henderson*, 172 F.Supp.2d 951, 963 (N.D.Ohio 2001). Examining the reasonableness of plaintiff's request for accommodation, "[r]easonable accommodations consist of '[m]odifications or

adjustments to the work environment, or to the manner or circumstances under which the position * * * is customarily performed, that enable an individual with a disability * * * to perform the essential functions of that position.'" *Obnamia v. Shinseki*, 569 Fed.Appx. 443, 445 (6th Cir.2014), quoting 29 C.F.R. 1630.2(o)(ii). An ADA plaintiff has the burden of "showing 'that the accommodation is reasonable in the sense both of efficacious and of proportional to costs.'" *Keith v. Cty. of Oakland*, 703 F.3d 918, 927 (6th Cir.2013), quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir.1996). If a disabled employee makes a reasonable accommodation request, the employer is obligated to engage in the "interactive process," which requires "communication and good-faith exploration of possible accommodations." 29 C.F.R. § 1630.2(o)(3); Kleiber, 485 F.3d at 871.

{¶14} For purposes of the direct evidence framework, the Court finds that Plaintiff was disabled, with major depression and acute stress disorder, and is otherwise qualified as a prison chaplain despite this disability. The issue with whether Plaintiff made requests for *reasonable* accommodations under the circumstances. "A 'reasonable accommodation' under the ADA may include 'reassignment to a vacant position.'" *Gearhart v. E.I. DuPont de Nemours & Co.*, 833 Fed.Appx. 416, 425 (6th Cir.2020), quoting 42 U.S.C. § 12111(9)(B). "However, the ADA does not require an employer to 'waive legitimate, non-discriminatory employment policies[,] displace other employees' rights to be considered in order to accommodate the disabled individual,' or 'create new jobs * * * in order to accommodate a disabled individual.'" *Id.*, quoting *Burns v. Coca-Cola Ents., Inc.*, 222 F.3d 247, 257 (6th Cir.2000).

**Northeast Reintegration Center**

{¶15} When Plaintiff applied to the Northeast, another ODRC employee with more seniority had also applied. Employers are not required to "violate a collective bargaining agreement * * * in order to return a disabled employee to work." *Henschel v. Clare Cty. Rd. Comm.*, 737 F.3d 1017, 1025 (6th Cir.2013); *see also Rector v. Ohio Bur. of Workers' Comp.*, 10th Dist. Franklin No. 09AP-812, 2010-Ohio-2104, ¶ 16, quoting *Woodruff v. School Bd. of Seminole Cty.*, 304 Fed. Appx. 795, 801 (11th Cir.2008) ("'An employer is not required to grant an employee a transfer to a different position if such a transfer

violates a collective bargaining agreement because such an accommodation is not reasonable.'").  More particularly, "the ADA does not require disabled individuals to be accommodated by sacrificing the collectively bargained, bona fide seniority rights of other employees."  *Eckles v. Conrail*, 94 F.3d 1041, 1051 (7th Cir.1996); *see also Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1307 (11th Cir.2000) ("[A]n accommodation that contravenes the seniority rights of other employees under a collective bargaining agreement is unreasonable as a matter of law.").

{¶16} A requested transfer that violates collective bargaining is not a reasonable accommodation.  The position at Northeast was a SEIU 1199 collective bargaining unit position and was required to be filled under the terms of the collective bargaining agreement.  Pennington testified that when two bargaining unit employees apply for the same position, the more senior employee gets the job unless the junior employee can show that they are much more qualified.  Plaintiff and Tate, a more senior chaplain, applied for the position.  Under the collective bargaining agreement, Tate had the right to the position based on his seniority rank.  ODRC is not required to ask more senior applicants to withdraw an application.  This precedent would infringe on collective bargaining rights, which the law has historically protected.  Even though in hindsight Tate testified he would have withdrawn his application, requiring all applicants be asked whether they would withdraw from a collectively bargained position in preference for another applicant does not constitute a reasonable accommodation to trigger the interactive process.

{¶17} Plaintiff cites to Tate and Pennington's testimony that a more senior member withdrawing his application so a less senior member can obtain a transfer would not violate the collective bargaining agreement.  That may well be true.  However, the source of the withdrawal request must be considered.  If ODRC management asked Tate to withdraw his application so that a less senior member could be hired, that could be viewed as coercive.  As a result, such a course of conduct cannot be said to constitute a reasonable accommodation.  Had Plaintiff herself asked Tate to do so, that would not have raised the same issue, but to require ODRC management to do so is not reasonable.

{¶18} Upon independent review of the evidence, the Court does not find that Plaintiff's transfer request to Northeast was a reasonable accommodation.  Accordingly,

the Magistrate properly applied the relevant facts to the law. Accordingly, the Court OVERRULES Plaintiff's first objection.

**Chillicothe Correctional Institution**

{¶19} When Plaintiff applied to the Chillicothe Correctional Institution, she was no longer employed with ODRC. Plaintiff's employment with ODRC ended on January 18, 2019, when the involuntary disability separation process was completed. ODRC initiated this process because medical reports showed Plaintiff was unable to perform the essential functions of her employment due to her disability. Pennington testified that an involuntary disability separated individual is identified in personnel records as having been terminated and as such is considered an external candidate because they are not currently employed by the state. Pennington also testified that there is a hierarchy for hiring for collective bargaining unit positions: bargaining unit employees who work for the agency; bargaining unit applicants from other agencies; non-union internal employees; and finally external candidates. Accordingly, while applying to the position at Chillicothe, Plaintiff was considered an external candidate. "Moreover, 'employers simply are not required to keep an employee on staff indefinitely in the hope that some position may become available some time in the future.'" *Thompson v. E.I. DuPont deNemours & Co.*, 70 Fed.Appx. 332, 337 (6th Cir.2003), quoting *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir.1996). While there is testimony that ODRC could have kept Plaintiff employed on unpaid leave, it was not required. Moreover, even if ODRC's decision to initiate involuntary disability separation was discretionary, there is no evidence that keeping an employee on an extended leave of absence was the prevailing policy of ODRC or likely in this circumstance. ODRC has a policy to keep chaplain positions actively filled.

{¶20} Plaintiff did not propose the reasonable accommodation to transfer to the vacant position at Chillicothe when she was still employed because the position was not vacant at that time and there was no evidence it would become vacant. In fact, the Chillicothe position did not become vacant until months after Plaintiff's involuntary disability separation process was completed. Even if involuntary disability separation is different than permanent severance of employment, a request was never made to transfer

to a vacant position at Chillicothe to trigger the interactive process. "Indeed, a court need not consider whether there has been a failure to engage in the interactive process when a plaintiff fails to meet his burden of showing that a position to accommodate him was vacant." *Arthur v. Am Show, Inc.*, 625 Fed.Appx. 704, 711 (6th Cir.2015). Plaintiff cites *Arthur* as precedent that ODRC had an ongoing duty to accommodate a transfer even after employment is terminated. However, the Sixth Circuit does not analyze the merits of this position since it was immaterial to the overall decision, but rather tangentially alludes to the potential as a case of first impression in a footnote. *Id.* at fn. 3 ("[Employer] briefly argues that it had no duty under the ADA to accommodate [employee] since [employee] was technically no longer an employee of [employer]. [Employer] cites to no legal authority to support this position and the Court can find none."). However, here, Plaintiff did not appeal the disability separation, request to retain her employment longer, or initiate the reinstatement process at any time before or during her application for the position at Chillicothe. The Court cannot guess as to the hiring decision at Chillicothe, but it is apparent from Plaintiff's testimony that she did not put Chillicothe or Lebanon on notice of her application. Plaintiff did not communicate the possibility of a reasonable accommodation relating to the vacant position at Chillicothe to the hiring committee or prior contacts at Lebanon. Simply, there was never a request for a transfer to a vacant position at Chillicothe when Plaintiff was still an employee of ODRC.

{¶21} Upon independent review of the evidence, the Court does not find that Plaintiff's application to Chillicothe was a reasonable accommodation transfer request. Accordingly, the Magistrate properly applied the relevant facts to the law. Accordingly, the Court OVERRULES Plaintiff's second objection.

**Plaintiff's Third Objection**

{¶22} Plaintiff next objects to the Magistrate's conclusion that ODRC did not ratify Allen's assault and battery against her. Initially, it is unrefuted that Allen's actions constituted the intentional torts of assault and battery and were outside of the scope of her employment. Accordingly, the issue is whether ODRC's conduct ratified the assault and battery.

{¶23} It is well settled that an employer may expressly or impliedly ratify the acts of its employees performed beyond the scope of employment. *See Groner v. deLevie,* 10th Dist. Franklin No. 00AP-1244, 2001 Ohio App. LEXIS 1928, 27-28 (May 1, 2001). "The continued employment of an individual who committed an intentional tort is not, in and of itself, enough to show ratification by an employer. *Jackson v. Hogeback*, 12th Dist. Butler No. CA2013-10-187, 2014-Ohio-2578, ¶ 27, citing *Fulwiler v. Schneider*, 104 App.3d 398, 407, 662 N.E.2d 82 (1st Dist.1995). However, it remains unclear whether ratification can occur through an employer's silence or acquiescence. *See Lanning v. Brown*, 84 Ohio St. 385, 392, 95 N.E. 921 (1911) ("it seems to be the law that to confirm or ratify, one must have knowledge of the matter or transaction to be confirmed or ratified, and that silence or even acquiescence does not amount to such ratification."); *but see Campbell v. Hospitality Motor Inns. Inc.*, 24 Ohio St.3d 54, 58, 493 N.E.2d 239 (1986) (some evidence "could be viewed as demonstrating corporate ratification by silence * * *."). Nevertheless, it appears that "there are some situations where one would expect a principal to act, and thus the failure to act can be viewed as a manifestation of intent to ratify the agent's act." *Amato v. Heinika Ltd.*, 8th Dist. Cuyahoga No. 84479, 2005-Ohio-189, ¶ 6.

{¶24} ODRC ratified Allen's intentional torts. Allen assaulted Plaintiff on Thursday, September 20, 2018. While the assault on Plaintiff was the push itself, it is not lost on the Court that the more serious nature of the assault was the conditions under which it took place—Plaintiff was pushed into an area where virulent pepper spray had been deployed, and she was exposed to it. By Monday, September 24, 2018, after learning of the incident, Warden Harris had reviewed the security footage of the incident, opened a formal investigation, reassigned another deputy warden to oversee Plaintiff and the chapel and chaplain services, and ordered Allen to stay away from Plaintiff. Allen repeatedly failed to obey these orders without consequence. Plaintiff, who was very fearful of Allen, was significantly shaken up by this series of incidents and by September 28, 2018, she had contacted her Employee Assistance Program and never worked again at Lebanon Correctional Institution. Moreover, it was not until March 4, 2019, that Chambers-Smith gave Allen a two-day working suspension. However, even if these actions superficially show they took the incident seriously, it is not dispositive of the

situation when there was not a sufficient investigation of the incident or interpretation of it with the salient facts considered.

{¶25} Warden Harris and Chambers-Smith failed to take the incident, and Allen's prior and subsequent behavior, seriously. Plaintiff had been assaulted by Allen and it is apparent from her testimony that she was fearful of being around Allen, testimony that this Court finds credible. First, Warden Harris clearly indicated he was previously aware that Allen's workplace management style was described as harassing and disrespectful. Allen had other complaints against her for her interactions with employees under her management. As such, Warden Harris was on notice of Allen's propensity for this type of behavior. Second, Plaintiff testified that she reported Allen violating Warden Harris' stay away order multiple times. Plaintiff testified Allen visited the chapel multiple times, parked near her, and even came face to face with her while she was speaking with Brown in his office. However, Warden Harris failed to sufficiently investigate, yet alone stop, Allen's ongoing behavior. Third, it was not until February 19, 2019, Chambers-Smith's first day as Director, when Allen was issued the two-day working suspension, which was effective on March 4, 2019. While Chambers-Smith testified that she watched the security video and read a written conclusion of the incident, it is not evident from her testimony that she in fact was aware that Plaintiff was shoved into an area where virulent pepper spray had been deployed, or appreciated the seriousness of the incident, when she made her decision. Chambers-Smith failed to read the investigation report or further investigate the incident, even though she knew Allen had been dishonest during the investigation. Moreover, Chambers-Smith had no knowledge of the stay away order or repeated violations. Simply put, Chambers-Smith failed to take into account many factors that, when taken as a whole, undermine the claim that she conducted a serious investigation prior to issuing Allen's suspension. Further, a two-day paid working suspension is simply not consequential enough given the full context not only of the assault, but of Allen's inability to comply with Harris' orders. Fourth, Warden Harris repeatedly referred to the incident as "horseplay." Warden Harris characterized the incident as such initially after watching the security video, and continued to refer to it as such on Allen's written job evaluation a year after the incident, which shows a failure to fully grasp the seriousness of the incident. Finally, the Court does not find it persuasive that any difficulty in replacing

a Deputy Warden is evidence for condoning the highly inappropriate conduct of an employee against another employee, especially a supervisor against a subordinate.

{¶26} While Warden Harris and Chambers-Smith responded to the incident, it is clear there was no genuine effort to protect Plaintiff or discipline Allen. ODRC's failure to act, that is, to understand and appreciate what actually happened, can be viewed as a manifestation of intent to ratify. An improper or insufficient investigation can constitute ratification because an employee would (and should) expect their employer to thoroughly investigate all salient facts of a workplace assault. Such an investigation did not occur in this case. Under these circumstances, ODRC's response in relation to Allen's assault and battery upon Plaintiff was incomplete and seriously misunderstood. This failure constitutes ratification.

{¶27} Upon independent review of the evidence, the Court finds ODRC ratified the assault and battery upon Plaintiff. Accordingly, the Magistrate improperly applied the relevant facts to the law. Therefore, the Court SUSTAINS Plaintiff's third objection.

**Conclusion**

{¶28} The Court finds that the Magistrate has properly determined the factual issues and appropriately applied the law in this case in relation to the failure-to-accommodate disability discrimination claims. Accordingly, Plaintiff's first and second objections will be overruled.

{¶29} However, the Court finds that the Magistrate has not properly determined the factual issues and appropriately applied the law in this case in relation to the assault and battery claim. Accordingly, Plaintiff's third objection will be sustained. Judgment shall be rendered in favor of Plaintiff.

PATRICK E. SHEERAN
Judge

[Cite as *Dove v. Ohio Dept. of Rehab. & Corr.*, 2023-Ohio-1840.]

| | |
|---|---|
| KIMBERLY DOVE | Case No. 2019-00969JD |
| Plaintiff | Judge Patrick E. Sheeran |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

## IN THE COURT OF CLAIMS OF OHIO

{¶30} Upon an independent, de novo review of the record, the Court finds that the Magistrate has properly determined the factual issues and appropriately applied the law with the exceptions noted in the Decision filed concurrently herewith. Accordingly, Plaintiff's first and second objections are OVERRULED, and Plaintiff's third objection is SUSTAINED. Therefore, the Court modifies the Magistrate's Decision and Recommendation, including findings of fact and conclusions of law contained therein, consistent with this Decision.

{¶31} The Court finds Defendant liable for the assault and battery upon Plaintiff through its ratification of its employee's misconduct. Judgment on the assault and battery claim is rendered in favor of Plaintiff. A case management conference with the Magistrate is set for *May 3, 2023, at 10:00 a.m.*, to discuss further proceedings on determination of damages. Instructions on how to access the conference are attached.

PATRICK E. SHEERAN
Judge

**Filed April 17, 2023**
**Sent to S.C. Reporter 6/2/23**