NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0543n.06

No. 12-6163

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jun 03, 2013*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JAMES DILLON DAWSON, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| JOHN DORMAN, individually and in his official | ) DISTRICT OF KENTUCKY |
| capacity as a Ludlow City Police Officer; A. WAYNE | ) |
| TURNER, individually and in his official capacity as | ) |
| Ludlow City Chief of Police; and BENNY | ) |
| JOHNSON, individually and in his official capacity as | ) |
| Ludlow Assistant Police Chief, | ) |
| | ) |
| Defendants-Appellees. | ) |
| | ) |

BEFORE: SILER, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Police suspected that plaintiff James Dawson had robbed Eva Morrow at gunpoint in her home. Dawson was later arrested and indicted on one count of first-degree robbery. The prosecutor dismissed the indictment on the eve of trial after concluding that the case was in trouble due to witness credibility issues. Dawson then sued lead investigator John Dorman under 42 U.S.C. § 1983 for Fourth Amendment false arrest and malicious prosecution, claiming that Dorman provided false or misleading information to obtain the arrest warrant, lied during the preliminary examination, and lied again before the grand jury. Dawson also sued Dorman's two supervisors and the city that

employed Dorman for violations of state and federal law. The district court entered summary judgment in defendants' favor on Dawson's federal claims and declined to hear his state-law claim. Dawson appealed.

After reviewing the record, the parties' briefs, and the applicable law, we conclude that a comprehensive written opinion addressing all of the issues raised on appeal would serve no jurisprudential purpose. We therefore affirm the judgment largely for the reasons stated in the district court's opinion. However, it is appropriate to note one error in the district court's analysis.

Among other allegations, Dawson claimed that Dorman committed the constitutional tort of malicious prosecution by deliberately fabricating evidence to support the robbery charge and offering that evidence to the grand jury.[1] *See Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). Dorman testified before the grand jury that Dawson's latent fingerprint was found on the shoebox from which $20,000 in cash was stolen, when in fact his print was found, innocently enough, on a soda can seized from his brother's residence. Six index cards containing fingerprints taken from the shoebox, the can, and a drinking glass, collectively, were sent to the lab, along with a form on which Dorman wrote (inaccurately) that all six prints were lifted from the shoebox. When Dawson's prints matched one of the latent prints (the one from the soda can), it was believed that Dawson's print was

---

[1]After the parties filed their appellate briefs, Dorman brought to our attention two cases involving the defense of absolute immunity, which potentially applies to Dawson's claim. *See Rehberg v. Paulk*, 132 S. Ct. 1497, 1505–07 (2012); *Vaughan v. City of Shaker Heights*, No. 11-4434, 2013 WL 518443, at *2 (6th Cir. Feb. 12, 2013). The cases do not help Dorman, however, as he abandoned the defense by not asserting it before us as an alternative ground for affirmance. *See Music v. Arrowood Indem. Co.*, 632 F.3d 284, 286 n.1 (6th Cir. 2011).

on the shoebox, thus implicating him in the robbery. Dorman relayed that belief to the grand jury, which then issued the indictment. In this lawsuit, Dorman appended to his summary judgment motion an affidavit in which he admitted that his grand jury testimony was false in this respect but claimed he did not know it at the time. He claimed he mistakenly assumed that all six prints were collected from the shoebox and did not know the truth as a result of never personally examining the index cards before submitting them to the lab. (The record does not disclose *why* Dorman assumed all of the prints came from the shoebox.)

Relying on his affidavit, Dorman argued to the district court that his *mere negligence* caused the fingerprint mixup, which in turn caused him to testify falsely before the grand jury. Because there was no evidence that he acted deliberately or with reckless disregard for the truth, he argued that he was entitled to summary judgment on Dawson's malicious prosecution claim. *See Sykes*, 625 F.3d at 312 (citing *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006)). Dawson argued in response that Dorman *knew* that some of the lifted prints came from the can and glass but wrote on the form that they all came from the shoebox, in order to make the case against Dawson stronger. The district court credited Dorman's statement that it was an accident and granted him summary judgment on this claim. Dawson says this was error, claiming that "[t]he District Court balanced 'Dorman *intentionally* did this' on one hand and 'Dorman *accidentally* did this' on the other hand," and thereby usurped the jury's duty to resolve credibility disputes. We agree.

Courts may not resolve credibility disputes on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This rule of procedure typically applies where there is a

*genuine* conflict in the evidence, with affirmative support on both sides, and where the question is which witness to believe. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2726, at 447 (3d ed. 1998) ("Thus, for example, if conflicting testimony appears in affidavits and depositions that are filed, summary judgment may be inappropriate as the issues involved will depend on the credibility of the witnesses."); *e.g.*, *Nelms v. Wellington Way Apartments, LLC*, No. 11-3404, 2013 WL 408034, at *6 (6th Cir. Feb. 4, 2013) (summary judgment inappropriate given "differing verbal accounts of what transpired inside the apartment").

In this case, there is no truly "conflicting" evidence regarding Dorman's mental state; no evidence directly refutes Dorman's testimony that he was simply negligent in his police work. And Dawson cannot survive summary judgment simply by stating that a jury could disbelieve Dorman's testimony and find instead that he acted deliberately. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[W]hen challenges to witness[] credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper."). The "prospect of challenging a witness'[s] credibility is not alone enough to avoid summary judgment." *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998); *accord TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158 (Fed. Cir. 2004) ("Summary judgment should not be denied simply because the opposing party asserts that the movant's witnesses are not to be believed."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (explaining that the nonmoving party must "go beyond the pleadings" at summary judgment).

But Dawson has some evidence supporting his theory regarding Dorman's mental state. In this respect, "summary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant's witnesses." *TypeRight Keyboard Corp.*, 374 F.3d at 1158; *see* 10A Wright, Miller & Kane, *supra*, § 2726, at 446 ("Clearly, if the credibility of the movant's witnesses is challenged by the opposing party *and specific bases for possible impeachment are shown*, summary judgment should be denied and the case allowed to proceed to trial[.]" (emphasis added)). The "specific facts" Dawson offers here involve Dorman's history of dishonesty as a police officer, a history that includes dishonesty and fraud with his former employer, current employer, and an Assistant United States Attorney who asked Dorman on two different occasions while preparing for trial whether he had any "issues arising from dishonesty" or a lack of integrity. Dorman falsely responded "no" to the prosecutor's questions. After learning that Dorman had lied, the AUSA dismissed the case. Dorman was demoted from detective to patrolman during Dawson's prosecution for reasons a jury could find were related to his record of dishonesty. We conclude that this record sufficiently establishes a genuine dispute regarding Dorman's mental state.

However, Dawson does not prevail on his malicious prosecution claim simply by showing that Dorman deliberately lied when submitting the fingerprint form and testifying before the grand jury. He must also establish that Dorman's lies were critical in establishing probable cause and influenced the prosecutor's decision to proceed. *See Sykes*, 625 F.3d at 310–12. He cannot do this in view of the other evidence in the case, notably Eva's identification. It makes no difference that the prosecutor declined to offer the identification to the grand jury and relied instead upon the

fingerprint evidence.  Had there been no forensic evidence, there is no doubt (and a jury could not reasonably conclude otherwise) that the prosecutor would have offered the identification just as he had months earlier at the preliminary examination and thereby established probable cause, *see Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999), unless he believed then that Eva's identification was unreliable.  But there is no evidence of that.  And indeed there *is* evidence that the prosecutor considered the identification sufficiently reliable at the time.  When Dorman disclosed the mistake to the prosecutor (*after* the grand jury returned the indictment), the prosecutor decided to continue the case nonetheless, in view of Eva's identification.  That the prosecutor later dismissed the charge demonstrates only that he later harbored doubts about proving Dawson's guilt beyond a reasonable doubt, not that he doubted the reliability of the identification at the grand-jury stage.

In the end, the district court's resolution of a credibility question against the non-moving party on summary judgment does not require reversal, because Dorman's error in submitting the form and later testifying, which a jury could find was deliberate, was not critical to the determination of probable cause and did not influence the prosecutor's decision to proceed, two elements essential to Dawson's claim.  Summary judgment was appropriate.

AFFIRMED.