SHERYL H. LIPMAN, UNITED STATES DISTRICT JUDGE
Plaintiff Nedra Hastings is a teacher. While working for Defendant in the fall of 2014, she was diagnosed with post-traumatic stress disorder ("PTSD") and major depressive disorder ("MDD"), requiring twelve weeks of medical leave under the Family and Medical Leave Act of 1993 ("FMLA"). She alleges that, following her FMLA leave, she was entitled to return to her previous position, but Defendant refused to reinstate her. She brought this lawsuit, alleging violations of the FMLA and the Americans with Disabilities Act ("ADA"). (ECF No. 1.) Specifically, she claims that Defendant interfered with her right to take leave under the FMLA and retaliated against her for exercising those rights. She further contends that Defendant discriminated against her on the basis of her disability and failed to provide a reasonable accommodation, both of which violate the ADA.[1] Finally, she claims that Defendant interfered with her ADA rights and that it illegally retaliated against her in violation of the ADA.
Now before the Court are cross motions for summary judgment. On February 2, 2018, Plaintiff filed a Partial Motion for Summary Judgment on her FMLA interference claim, arguing that the undisputed facts show that Defendant's refusal to allow *970 her to return to work on January 19, 2015, entitle her to summary judgment. (ECF No. 48.) Defendant responded in opposition on March 1, 2018 (ECF No. 55), and Plaintiff replied on March 16, 2018 (ECF No. 58).
Defendant filed its Motion for Summary Judgment on March 2, 2018, purportedly seeking summary judgment on all claims.[2] (ECF No. 57.) Plaintiff filed her Response in Opposition on March 30, 2018, asserting that there are genuine issues of material fact that make summary judgment inappropriate. (ECF No. 61.) Defendant replied on April 12, 2018, concluding the briefing phase. (ECF No. 65.)
For the reasons more fully articulated below, the Court finds that there are genuine issues of material fact regarding all claims properly before it. Therefore, the Court DENIES both Motions.
FACTUAL BACKGROUND
Except where otherwise stated, the following facts, taken from the Parties' statements of undisputed material facts, are considered undisputed for the purposes of this Order.
Plaintiff became a teacher in 1991 and began working for Defendant in 2010. (ECF Nos. 48-1 at 2, 48-2 at ¶ 1.) She appears to have had a good work history, as she was never formally disciplined and even won a seventh-grade teacher of the year award in 2013-2014. (ECF No. 48-1 at 2.) Not surprisingly, then, Defendant renewed her contract for the 2014-2015 school year. (ECF Nos. 1 at ¶ 12, 48-2 at ¶ 3.) Early in the fall semester, though, on September 5, 2014, Plaintiff experienced an anxiety attack and left work to go to an emergency room. (Id. )
She was diagnosed with PTSD and MDD. (See ECF No. 1 at ¶¶ 14-16.) Her medical providers recommended intensive therapy, and Plaintiff began FMLA leave on October 9, 2014, to receive such therapy.[3] On October 15, 2014, Plaintiff's treatment provider faxed Stella Minor, the director of Human Resources for Defendant ("Director Minor"), a Certification of Healthcare Provider that requested Plaintiff be granted leave through November 24, 2014. (Id. at ¶ 13.) Director Minor put the request in Plaintiff's disability file but does not recall doing anything else.[4] (Id. ) Although Defendant's FMLA policy provides that a "physician's statement may be required by the director of schools when determining the period of disability," it was Director Minor's standard practice to assume employees were off work and on medical leave for the dates requested. (Id. at ¶¶ 7, 14.) Minor's practice was to inform the principal of the employee's return to work date.[5] (Id. at ¶¶ 14-15.)
*971 A little over two weeks later, on October 31, 2014, Plaintiff's healthcare provider faxed an official Fayette County Board of Education FMLA Request Form and Certification of Health Care Provider for Employee's Serious Health Condition to Director Minor. (Id. at ¶ 17.) It read, "It is my understanding that I am eligible for up to 12 weeks of leave per year under the Family Medical Leave Act and that I will be reinstated to my job after leave." (Id. at ¶ 18.) The form also stated that Plaintiff would be incapacitated until December 28, 2014. (Id. at ¶ 19.) According to Plaintiff, the form conveys her intention to return to work on December 28, 2014-a contention that Defendant disputes. (Id. at ¶ 20); (ECF No. 55-1 at ¶ 20.) Director Minor testified that she recalls receiving the form and believed it was sufficient to qualify Plaintiff for FMLA coverage. (ECF No. 48-2 at ¶ 22.)
At some point thereafter, Plaintiff's physician gave her two "Sick Leave Bank Medical Certifications," signed December 10, 2014, that confirmed both her diagnosis and her treatment, and gave a return to work date of January 14, 2015. (ECF No. 48-2 at ¶ 28.) Plaintiff mailed these documents to Defendant (id. ), and Director Minor testified that she remembers receiving a copy of the certification (ECF No. 55-1 at ¶ 28). Defendant, however, disputes Plaintiff's interpretation of the content of the forms, arguing that they give only an approximate return to work date of January 14, 2015. (Id. )
On December 11, 2014, Plaintiff applied[6] for Social Security Disability benefits due to her ongoing anxiety. (ECF No. 61-2 at ¶ 20.) In the application, Plaintiff stated that she became disabled on October 6, 2014, and was still disabled. (See ECF No. 50-9 at 6.) She also confirmed that she was still employed, and, in a Declaration, she asserted that she intended to receive disability benefits to cover her FMLA leave from October 6, 2014, through mid-January 2015. (ECF No. 50-9 at 1, 6, 7.)
Plaintiff contends that she mailed a letter to Director Minor on January 14, 2015, confirming that she was able to return to her teaching position on January 19, 2015.[7] (ECF No. 48-2 at ¶ 29.) Director Minor testified that she remembers receiving the letter and that she expected Plaintiff to return to work on January 19, 2015, because, in her view, Plaintiff was cleared to return.[8] (Id. at ¶ 34); (S. Minor Dep. 121, ECF No. 49-8.) According to Minor, she informed Plaintiff's principal that Plaintiff would be returning to work but did not inform Superintendent James Teague because she assumed Teague had also received Plaintiff's letter. (Id. at ¶ 31.) Minor testified that she believes that she tried to call Plaintiff, but her voicemail was full or not accepting messages. (Id. at ¶ 32.)
Having heard nothing from Defendant, Plaintiff alleges that she left voicemails for *972 both Minor and Superintendent Teague on January 16, 2015, confirming that she was cleared to return to work and inquiring whether she needed to sign any paperwork prior to returning. (Id. at ¶ 35.) She received no response. (Id. ) Defendant disputes that voicemails were left, relying only on Minor's testimony that she does not recall receiving such a voicemail. (ECF No. 55-1 at ¶ 35.) Defendant provides no evidence as to Superintendent Teague's position on whether he received Plaintiff's voicemail.
Plaintiff asserts that, having received no response from Defendant by Sunday, January 18, 2015 (one day before she was supposed to return to work), she called Principal Watkins. (ECF No. 48-2 at ¶ 36.) According to Plaintiff, Watkins told her that she was unable to take any action in preparation for Plaintiff's return, and Plaintiff should not return before receiving clearance. (Id. ) Plaintiff also contends that Watkins stated that she "would hate for you to come and the administration find out that you're here and security have to escort you off school property in-in front of the kids and everybody." (Id. ) In her affidavit, Watkins testifies that she does not remember receiving a call from Plaintiff concerning her return to work,[9] but Watkins also denies making the quoted statement. (See ECF No. 55-1 at ¶ 36.) Plaintiff testifies that she continued to try to contact Superintendent Teague and Director Minor throughout January 2015 but got no response. (ECF No. 48-2 at ¶ 37.) However, Minor does not recall receiving any voicemails from Plaintiff during that period. (See ECF No. 55-1 at ¶ 37.) Defendant, again, provides no citation to a response from Teague. Significantly, it is undisputed that, between October 2014 and May 2015, Plaintiff never received any information from Defendant regarding an approved start or end date to her FMLA leave.[10] (Id. at ¶ 23.)
To assist her in a separate matter against Defendant, Plaintiff enlisted the services of two attorneys from Memphis Area Legal Services ("MALS") during the fall of 2014 through July 2015.[11] (ECF No. 48-2 at ¶ 41.) On March 25, 2015, Plaintiff and her MALS attorneys met with Superintendent Teague and Defendant's attorney, Thomas Minor ("Attorney Minor"), concerning the separate matter. (See id. at ¶ 43.) During that meeting, Plaintiff avers that she stated, "[T]his meeting wouldn't need to take place if I had been allowed to-to return to work." (Id. at ¶ 45.) Defendant disputes that that statement was made, directing the Court to Attorney Minor's affidavit, in which he swore that there was no conversation regarding Plaintiff not being allowed to return to work after her FMLA leave. (ECF Nos. 55-1 at ¶ 45, 55-10 at 2.)
At a hearing in the separate matter in April 2015, Plaintiff alleges that she was asked why she did not return to work in January. (See ECF No. 48-2 at ¶ 46.) She replied that Teague would not allow her to *973 return. (Id. ) Teague then purportedly stated that she was not allowed to return because she was suing Defendant. (Id. ) Defendant ostensibly disputes this, directing the Court to Attorney Minor's Affidavit. (ECF No. 55-1 at ¶ 48.) However, the specific paragraph cited by Defendant references only the March meeting, and nowhere in the Affidavit is the April hearing mentioned. (See ECF No. 55-10.) Plaintiff was not reinstated to her position after the hearing, and, on May 28, 2015, she received a Separation Notice from Defendant. (ECF No. 48-2 at ¶ 6.)
Defendant argues that Plaintiff was not returned to her position because she never actually attempted to return. (ECF No. 55 at 8.) Indeed, according to Defendant, Plaintiff voluntarily abandoned her job. (Id. at 11.) To support its contention, Defendant cites two medical examinations of Plaintiff completed by doctors with the Tennessee Disability Determination Services, one occurring on March 11, 2015, and the other on April 14, 2015. (Id. at 13.) The March examination was a psychological one, and, according to the examiner's notes, Plaintiff stated that she had not attempted to return to work since 2014. (ECF No. 57-2 at ¶ 26.) The examiner also noted that, in response to being asked "why she was unable to work, [Plaintiff] said, 'PTSD, depression, anxiety, chronic back pain, panic attacks, fatigue.' " (ECF No. 55-14 at 2.) Plaintiff disputes this statement, arguing that it is neither signed nor acknowledged by her and is thus only the mental impressions of the examiner. (ECF No. 61-2 at ¶ 26.)
During the April examination, Plaintiff stated that her symptoms had not improved since leaving work in October 2014. (ECF No. 57-2 at ¶ 28.) Plaintiff also disputes this statement, arguing that it reflects the author's interpretation of Plaintiff's professed subjective feelings on the date of the examination. (ECF No. 61-2 at ¶ 28.) Plaintiff further contends that the statement is not material to whether she requested to return to work on multiple occasions in January 2015 and in the months following, or was able to return to work during this period. (Id. )
Plaintiff also argues that, between mid-January 2015 and her termination in May 2015, she received no written communications from Defendant regarding allegations of job abandonment, approval for leave or discipline. (Id. at ¶ 47.) Defendant disputes this, asserting that Teague sent Plaintiff a letter on May 11, 2015, stating that Defendant was not going to renew her contract. (ECF No. 55-1 at ¶ 47.) The Parties agree that Plaintiff never notified Defendant that she did not intend to return to work or that she did not wish to renew her employment contract. (Id. at ¶ 48.)
ANALYSIS
A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views any inferences drawn from the underlying facts "in the light most favorable to the nonmoving party." Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
Once a properly supported motion for summary judgment has been made, the party opposing summary judgment must show that there is a genuine dispute of material fact by pointing to evidence in the record or must argue that the moving party is not entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1). The opposing party "cannot rest solely on the allegations made in [his] pleadings." Everson v. Leis, 556 F.3d 484, 496 (6th Cir. 2009) (quoting *974 Skousen v. Brighton High Sch., 305 F.3d 520, 527 (6th Cir. 2002) ) (alteration in original). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
While the Court views all evidence and factual inferences in the light most favorable to the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48, 106 S.Ct. 2505. The Court's role is not to weigh evidence or assess witness credibility but simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Kroll v. White Lake Ambulance Auth., 763 F.3d 619, 623 (6th Cir. 2014) (quoting Anderson, 477 U.S. at 251-52, 106 S.Ct. 2505 ).
Plaintiff alleges numerous causes of action under both the FMLA and the ADA. Factually, these claims revolve around the January 2015 return to work. As for her FMLA claims, she argues that Defendant illegally interfered with her exercise of her FMLA rights and that it retaliated against her for exercising those rights. (ECF Nos. 1 at 15, 61 at 2.) Both Parties move for summary judgment on Plaintiff's FMLA interference claim, but neither addresses her retaliation claim. Therefore, the Court only analyzes whether summary judgment is appropriate for either Party as to her FMLA interference claim. Her FMLA retaliation claim proceeds to trial.
Plaintiff's causes of action under the ADA consist of disability discrimination, failure to provide a reasonable accommodation, interference and retaliation. Defendant asserts that it is entitled to summary judgment on Plaintiff's disability discrimination and failure to accommodate claims only. Plaintiff, predictably, disagrees. Here again, because Defendant did not move for summary judgment as to Plaintiff's ADA interference and retaliation claims, the Court does not address them, and they also are ripe for trial.
Therefore, based on the above, the Court examines Plaintiff's claims for FMLA interference, disability discrimination and failure to accommodate to assess whether summary judgment is appropriate.
I. Plaintiff's Claim for FMLA Interference
Plaintiff argues that she is entitled to summary judgment because the facts show that, after being medically cleared, she attempted to return to work in January 2015, but Defendant prevented her from doing so, allegedly in violation of the FMLA. (ECF No. 48-1 at 17.) Defendant disputes that and argues that it is entitled to summary judgment because the facts demonstrate that Plaintiff did not attempt to return to work and thus abandoned her job. (ECF No. 57-1 at 13.) Further, according to Defendant, Plaintiff is estopped from pursuing this claim because she represented in her application for disability benefits that she was disabled and therefore could not work from December 2014 through April 2015, the same time period for which she alleges that Defendant illegally refused to return her to work. (See id. at 16-17.)
The Court finds that there are material issues in dispute concerning Plaintiff's attempt to return to work, her application for disability benefits and Defendant's argument that she abandoned her job. Therefore, the Court DENIES summary judgment to both Parties.
*975 A. The FMLA
Under the FMLA, an "eligible employee"[12] is entitled "to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons." Mitchell v. Chapman, 343 F.3d 811, 826 (6th Cir. 2003) ; see also 29 U.S.C. § 2612(a)(1). If, after the leave, the employee can perform the "essential functions" of the previous position, the employee will "be restored to the same or equivalent position upon returning to work." Id.; 29 U.S.C. § 2614(a)(1) ; 29 C.F.R. § 825.216(c) ; Verhoff v. Time Warner Cable, Inc., 299 Fed. App'x 488, 496 (6th Cir. 2008). An employer is liable if it "interferes with the FMLA-created right to medical leave or to reinstatement following the leave, ... regardless of the intent of the employer." Seeger v. Cincinnati Bell Telephone Co., LLC, 681 F.3d 274, 282 (6th Cir. 2012).
"A plaintiff may prove FMLA interference under the McDonnell Douglas burden-shifting framework." Hawkins v. Ctr. for Spinal Surgery, 34 F.Supp.3d 822, 846 (M.D. Tenn. 2014) (citing Demyanovich v. Cadon Plating & Coatings, L.L.C., 747 F.3d 419, 427 (6th Cir. 2014) ). "The employee has the initial burden of establishing [her] prima facie case; if [s]he does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action[.] [F]inally, the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual." Id.
To establish the prima facie case, a plaintiff must demonstrate five elements: (1) that she was an eligible employee, (2) that the defendant was a covered employer under the FMLA, (3) that she was entitled to leave, (4) that she gave notice of her intent to take leave and (5) that the employer denied her FMLA benefits to which she was entitled. Latowski v. Northwoods Nursing Ctr., 549 Fed. App'x 478, 487 (6th Cir. 2013) (citing Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir.2005) ). "Because the FMLA is not a strict-liability statute, the employee also must show that the employer's violation caused [her] harm." Casagrande v. OhioHealth Corp., 666 Fed. App'x 491, 496 (6th Cir. 2016).
However, where a plaintiff has applied for Social Security disability benefits, thereby representing that they were disabled during the same time period in which they claim that their employer did not return them to work, there is an apparent incongruity, and the plaintiff may be estopped from pursuing the FMLA or the ADA claim. Verhoff v. Time Warner Cable, Inc., 299 Fed. App'x 488, 497-98 (6th Cir. 2008). To overcome that hurdle, the plaintiff must proffer a sufficient explanation for their contradictory positions. Id. at 498.
Here, Defendant challenges the fifth element, whether it denied Plaintiff FMLA benefits to which she was entitled. (ECF No. 57-1 at 13.) Defendant contends that Plaintiff did not attempt to return to work and thus abandoned her job. (Id. ) In support, Defendant first argues that Director Minor and Principal Watkins both testified that they did not remember receiving a call or voicemails from Plaintiff requesting to be returned to work in January 2015.[13]
*976 (Id. at 14.) Defendant does concede that Director Minor testified that she received Plaintiff's January 14, 2015 letter providing that she was cleared to return to work, but argues that Minor must be mistaken because the letter does not, in fact, exist.[14] (ECF No. 55 at 9.) Defendant also contends that Plaintiff did not request to be returned to work in either the March meeting or the April hearing in which Superintendent Teague and Attorney Minor were present. (Id. at 10.)
Next, Defendant points to the logical discrepancy that Plaintiff pursued Social Security disability benefits from December 2014 through April 2015, even though she claims she was not disabled and could have returned to work during that time. (Id. at 12-14.) Indeed, Defendant argues that Plaintiff admitted in a medical examination in March 2015 that she had not attempted to return to work, and stated in an examination in April that her symptoms had not improved since leaving work in October 2014.[15] (Id. at 10.)
In response, Plaintiff first argues that the undisputed facts show that Defendant interfered with her FMLA rights in January 2015 when, after informing Defendant that she had been medically cleared, she attempted to return to work, but Defendant refused to reinstate her. (ECF No. 48-1 at 17.) In support, Plaintiff points to Director Minor's testimony that she received Plaintiff's January 15, 2014 letter, which cleared Plaintiff to return. (ECF No. 58 at 6.) Plaintiff also testified that she called and left voice messages for Director Minor and Superintendent Teague and that she actually spoke with Principal Watkins, who told Plaintiff not to come back to work until she had been cleared. (ECF No. 48-1 at 7.) Lastly, Plaintiff argues that she did request to be returned to her position in the March meeting and the April hearing, and points out that Defendant has not actually refuted the April statement. (ECF No. 61 at 16.)
As for her application for disability benefits, Plaintiff explains that, in December, she was only applying for benefits to cover the same period of time in which she was on FMLA leave. (Id. ) Additionally, Plaintiff contends that the statements she made to the medical examiners in March and April 2015 are too vague to constitute undisputed facts that she was actually disabled from December 2014 through April 2015. (Id. ) However, Plaintiff concedes that, by April 2015, her mental health problems had regressed, which she blames on Defendant for not returning her to her job. (Id. ) She also admits that she went back into intensive therapy on May 19, 2015. (Id. at 10.)
The Court finds that there are genuine issues of material fact concerning Plaintiff's attempt to return to work, her proffered explanation for applying for disability benefits and her alleged job abandonment. Therefore, summary judgment *977 is DENIED to both Parties. The Court first addresses the evidence surrounding Plaintiff's attempt to return to work, then turns to her application for disability benefits and finishes with Defendant's argument that she abandoned her job.
B. Plaintiff's Attempt to Return to Work
To begin, it is undisputed that Plaintiff was on FMLA leave from October 9, 2014, through January 14, 2015. Director Minor testified that she received Plaintiff's January 14, 2015 letter stating that Plaintiff was medically cleared to return to work on January 19, 2015. Further, according to Minor, there was no formal process by which employees were cleared to return to work, but the letter was sufficient to clear Plaintiff. (S. Minor Dep. 110, ECF No. 49-8.) Minor also testified that she "notified the principal that [Plaintiff] would be returning" and that she attempted to contact Plaintiff by phone, but Plaintiff's voicemail was full. (Id. at 119-20.) Defendant does not dispute that Minor testified as described.
Plaintiff then asserts that, having not spoken with Defendant by Sunday, January, 18, 2015, she called Principal Watkins. Watkins testified that she does not remember receiving a call from Plaintiff, but she also states that she did not tell Plaintiff (during that same call that she does not remember) that she "would hate for [Plaintiff] to come and the administration find out that you're here and security have to escort you off school property in-in front of the kids and everybody." (Watkins Aff. ¶ 7, ECF No. 55-11.) Additionally, Plaintiff alleges that Watkins stated that she was unable to take any action in preparation for Plaintiff's return and that Plaintiff should not return before receiving clearance. Defendant's only evidence to dispute both statements consists of Watkins testifying that she does not remember receiving Plaintiff's phone call. (Id. at ¶ 6.)
Next, Defendant disputes Plaintiff's contention that she stated in the March 2015 meeting that "this ... wouldn't need to take place if I had been allowed to-to return to work." But Defendant has provided no evidence to dispute that Superintendent Teague stated in the April 2015 hearing that he had refused to allow Plaintiff to return because she was suing Defendant. Thus, based on the undisputed facts (including Defendants' collective amnesia), Plaintiff has arguably demonstrated that Defendant interfered with her right to FMLA leave. Ultimately, however, the Court need not make that determination at this stage because Plaintiff's statements to the medical examiners when applying for disability benefits put her credibility at issue on this specific point, which creates a genuine issue for trial. See 10A Charles Alan Wright et al., Federal Practice and Procedure § 2726 (4th ed. 2018) (providing that a party may defeat summary judgment with specific facts that puts a witness's credibility in issue); see also Dawson v. Dorman, 528 Fed. App'x 450, 452 (6th Cir. 2013). This discussion continues below.
C. Plaintiff's Application for Social Security Disability Benefits
Plaintiff applied for disability benefits in December 2014 and continued with her application through at least April 2015, the same time period for which she alleges Defendant illegally refused to return her to her previous position. In attempting to explain her contrasting positions, Plaintiff first argues that her December application was meant to cover only the period for which she was already on FMLA leave, October 2014 through her projected return to work date in January 2015. Plaintiff is on firm footing here. In the December *978 application, she stated that her last day of work was in October 2014, identified Defendant as her employer and stated that she would return to work for Defendant in 2015. (ECF No. 50-9 at 6-7.) She also supplied a February 2, 2018 declaration confirming that that was her intent. (Id. at 1.) Thus, if Plaintiff only had to explain the December application, arguably, she has met her burden. However, she continued her application for disability benefits through the winter and spring of 2015, which, ultimately, leaves more questions than Plaintiff has answers, at least at this stage of the litigation.
On February 5, 2015, she filled out a Work History Report for the Disability Determination Services, but it is useful for neither side because it does not inquire into her ability to work at that time. From Plaintiff's perspective, then, so far, so good. The conflict comes in her alleged statements made in March and April 2015.
On March 11, 2015, Plaintiff was evaluated by a psychologist with the Tennessee Disability Determination Services. According to the psychologist's notes from the visit, Plaintiff stated that "she was unable to work" because of her "PTSD, depression, anxiety, chronic back pain, panic attacks, [and] fatigue." (ECF No. 55-14 at 2.) While this arguably constitutes an admission from Plaintiff that she was "unable to work," without more context, it is unclear exactly what the statement means. Perhaps Plaintiff meant that she was unable to work in December, or simply at the time of that appointment, neither of which defeats her claim. Or perhaps she meant that she had not been able to work from December through March, which does undercut her claim. Without more context, as would come from testimony at trial, the statement cannot be viewed in a light that benefits one party over the other.
In that same appointment, Plaintiff also reportedly stated that she had not attempted to return to work. (Id. at 3.) Plaintiff argues that this statement is also vague, and the Court agrees. It could mean that she had not attempted to return to work at all, which would derail her FMLA claim entirely, or, alternatively, it could mean that she had not physically attempted to return, which, of course, Plaintiff blames on Defendant for its illegal interference. Being bereft of any further context, the Court cannot discern the actual meaning of either statement. Therefore, the Court must consider the "facts" presented by these statements as in dispute.
As for Plaintiff's April 14, 2015 appointment with a medical doctor with the Tennessee Disability Determination Services, Plaintiff purportedly said that she developed PTSD in October 2014 and was doing no better.[16] (See ECF No. 55-15 at 2.) The Court finds that this statement suffers from similar vagueness issues. It could mean that she was doing no better on or around the time of the appointment, after a reprieve from her symptoms in January, or Plaintiff could have meant that she had not improved since October 2014. Therefore, the Court cannot view the statement as an undisputed fact in favor of either party.
Based on the above, the Court finds that there are credibility issues that require resolution by a factfinder. See 10A Charles Alan Wright et al., Federal Practice and Procedure § 2726 (4th ed. 2018). If the *979 jury credits Plaintiff's testimony, it could very well determine that Plaintiff was healthy enough to return to work in January, that Defendant interfered with her FMLA rights and that her proffered explanation for her application for disability benefits is sufficient. However, if the jury finds her testimony incredible, it could find that Plaintiff has not proffered a sufficient explanation for her simultaneous pursuit of disability benefits and an FMLA interference claim. Therefore, summary judgment as to Plaintiff's claim for FMLA interference is DENIED as to both Parties.
D. Voluntary Termination of Employment
Finally, the Court addresses Defendant's argument that Plaintiff voluntarily abandoned her job. Once again, the Court finds that there are disputed issues of material fact and thus DENIES summary judgment.
Defendant seems to present two alternative arguments based on McPherson v. Stokes, 954 S.W.2d 749, 751 (Tenn. 1997). First, it asserts that Plaintiff did not attempt to return to work at all (notwithstanding Director Minor's testimony that she received Plaintiff's January letter) and thus abandoned her job. See id. ("Courts will find that an employee has voluntarily terminated her employment if the employee fails to take all necessary and reasonable steps to protect his or her employment.") (citing Freeman v. District of Columbia Dep't of Emp't Servs., 568 A.2d 1091, 1093 (D.C.1990) ). Second, it contends that Plaintiff testified that she did not continuously attempt to return to work after January 2015. Therefore, Defendant submits that she did not take all steps reasonably necessary to protect her employment. See id.
McPherson, however, is inapposite. In that case, the plaintiff was approved to take one month of leave. Id. at 750. Six days before his leave expired, he requested an additional eleven months. Id. The company denied his second request and terminated him because he did not return to work following the expiration of his approved period of leave. Id. at 750-51. Here, Defendant concedes that Plaintiff was qualified for FMLA leave through mid-January 2015. Plaintiff testified that she sent Defendant at least two notices stating that she wished to return to her job following her FMLA leave, and Defendant's director of Human Resources admits that she received one of them. There are also disputes of fact as to whether the principal told her not to return to work, whether Plaintiff continued to call to check on her job status throughout January 2015, and the meaning of Plaintiff's statements in her applications for disability benefits. Finally, Plaintiff alleges that she made statements to Defendant regarding her return to work at a March meeting and an April hearing, but Defendant disputes only the statement made at the March meeting. These unresolved material issues of fact make summary judgment inappropriate, and the Motion is therefore DENIED .
II. ADA Claims
Plaintiff's ADA claims include failure to accommodate, interference, retaliation and disability discrimination. (ECF No. 1 at 16.) In its Motion for Summary Judgment, Defendant argues that, based on the undisputed material facts, it is entitled to summary judgment on Plaintiff's disability discrimination and failure to accommodate claims because she failed to make out a prima facie case for either. Defendant submits no argument on Plaintiff's claims for interference or retaliation. Therefore, those claims survive, and the Court evaluates only those addressed by Defendant, *980 beginning with the disability discrimination claim.
A. Disability Discrimination
Title I of the ADA prevents discrimination on the basis of a disability. 42 U.S.C. § 12112(a). "Where, as here, the plaintiff seeks to establish discrimination through indirect, rather than direct, evidence, we require the plaintiff to establish a prima facie case, followed by the familiar McDonnell Douglas burden-shifting[,]" as described above. Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1105 (6th Cir. 2008).
To prove a prima facie case of disability discrimination, [Plaintiff] must show that (1) [s]he is disabled; (2) [s]he is otherwise qualified for the position with or without reasonable accommodation; (3) [s]he suffered an adverse employment decision; (4) [Defendant] knew or had reason to know of [her] disability; and (5) [Plaintiff] was replaced or [her] position remained open.
Arthur v. Am. Showa, Inc., 625 Fed. App'x 704, 707 (6th Cir. 2015).
Defendant argues that Plaintiff fails to establish the first, second and fifth elements of her prima facie case. (ECF No. 57-1 at 11-13.) It also contends that it had legitimate, non-discriminatory reasons for not renewing Plaintiff's contract. (Id. at 13.) Plaintiff disagrees. The Court analyzes each challenged element in turn.
1. Prima Facie Case
a. Definition of a Disability
Defendant asserts that Plaintiff was not "disabled," as defined by the ADA, when she was ready to come back to work, and thus its alleged decision not to allow her to return could not have been based on her disability. (Id. at 12.) More specifically, Defendant argues that Plaintiff's medical provider discharged her on January 15, 2015. (Id. ) In the discharge summary, Plaintiff was prescribed no medications and required no restrictions. (Id. ) Thus, presumably, Defendant's position is that, because Plaintiff was discharged on January 15, 2015, she was not disabled at the time she allegedly attempted to return to work on January 19, 2015. (Id. ) Therefore, the Court interprets Defendant's argument to mean that it did not make its decision based on her disability and thus could not have discriminated against her. Defendant cites no authority for this position.
For her part, Plaintiff seems to have had trouble following Defendant's logic; trouble that was shared by the Court. (ECF No. 61 at 17-18.) She asserts that Defendant's argument does not adhere to the legal standard governing the definition of a disability under the ADA, and thus it has submitted no proof on the matter. (Id. at 12.) According to Plaintiff, the ADA does not require that a disabled person have work restrictions or need an accommodation. (Id. ) Moreover, Plaintiff points out that Defendant argues that she was not disabled, yet does not deny that it had knowledge of her disability, as is required under the fourth element. (Id. at 18.)
Defendant's position appears to be that, if an employee goes out on medical leave with a disability, but receives a clean bill of health immediately prior to returning to work, the employer is exempt from legal scrutiny under the ADA, even if it never allows them to return from their medical leave. This argument is untenable for a number of reasons. First, as noted above, Defendant cites no legal authority to support it. Second, even if the Court assumes that Defendant's position has some merit, its argument is untethered from the legal standard governing the definition of a disability, and the record is replete with evidence to show that there are disputed *981 issues of material fact as to whether Plaintiff was disabled, as defined by the ADA, after January 15, 2015.
A disability under the ADA is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C) ; see also id. at § (4)(A) (listing work as one major life activity). From October 9, 2014, through January 14, 2015, Plaintiff was being treated for PTSD and MDD with intensive therapy, which required her to miss work. Therefore, the undisputed evidence demonstrates that she was disabled because she had a mental impairment that substantially limited at least one of her major life activities, meeting the definition of disabled.
Upon her attempted return, either Plaintiff was no longer disabled and thus should have been able to return without incident, or she might have needed reasonable accommodations related to her continuing care. In either event, the alleged failure to allow her to come back to work could be tied to her disability, whether it be the past disability she suffered requiring time off, a continuing disability or perhaps even Defendant "regarding her" as disabled. As for the last possibility, the Court need look no further than Defendant's own argument on Plaintiff's FMLA interference claim. There, it asserted, at least in part and despite Director Minor's testimony, that it never received notice that Plaintiff was cleared to return to work, necessarily meaning that it still regarded her as disabled. Moreover, Defendant has not refuted Plaintiff's allegation that Principal Watkins told Plaintiff not to return to work until she was cleared.
Thus, the record indicates genuine disputes as to the exact state of affairs after January 15, 2015, defeating summary judgment.
b. Otherwise Qualified
The term "qualified individual," as defined by the ADA, means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Defendant does not argue that Plaintiff could not perform a specific essential function of her job. Indeed, Defendant does not explicitly tie an argument to the otherwise qualified element at all. Therefore, the Court is left to assume that its position is that Plaintiff's application for disability benefits in October 2014 through April 2015 estops her from arguing that she could perform all the essential functions of her teaching position during that timeframe. (See ECF No. 57-1 at 12-13.) Thus, according to Defendant, she would fail the otherwise qualified element of her prima facie case.[17]
In response, Plaintiff asserts that, just as with her FMLA interference claim, she need only supply a sufficient explanation for her contrary positions. (See ECF No. 61 at 13-17.) Plaintiff is correct.
"Claims for SSDI benefits and for damages under the ADA do not inherently conflict to an extent that requires a court to apply a negative presumption to the ADA claim." Peters v. Univ. Bank, No. 16-12066, 2018 WL 1570630, at *6, 2018 U.S. Dist. LEXIS 53716, at *16-17 (E.D. Mich. March 30, 2018) (citing Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) ). Just like *982 the FMLA interference claim, Plaintiff's ADA claim can proceed if she can proffer a sufficient explanation for her potentially conflicting positions. See Verhoff v. Time Warner Cable Co., 299 Fed. App'x 488, 497-98 (6th Cir. 2008). Because the Court has already held that there are unresolved issues of material fact concerning Plaintiff's attempt to return to work based on representations made in her application for Social Security Disability benefits, there are necessarily disputed issues of material fact here as well. Because of these disputes, summary judgment as to this element of her prima facie case is inappropriate.
c. Whether Plaintiff was Replaced or Her Position Remained Open
The fifth element of a disability discrimination claim requires a plaintiff to establish that her "position remained open while the employer sought other applicants or the disabled individual was replaced." Whitfield v. Tennessee, 639 F.3d 253, 259 (6th Cir. 2011) (citing Macy v. Hopkins Cty. Sch. Bd. of Educ., 484 F.3d 357, 365 (6th Cir. 2007) ). Defendant contends that Plaintiff fails to meet this element because she has not produced any proof that she was replaced with a non-disabled person. (ECF No. 57-1 at 13.) Plaintiff responds that her position remained open but was covered by a substitute teacher until May 2015, and, further, that she was later replaced by a less qualified teacher in August 2015. (ECF No. 61 at 19.)
Here, the Court finds that, based on the undisputed facts, Plaintiff can show that her position remained open while Defendant sought other applicants. First, although Director Minor's testimony could be more clear, she states that Defendant placed a substitute teacher in Plaintiff's classroom after Plaintiff began FMLA leave, and that she approved the hiring of a teacher to replace Plaintiff in July 2015. (S. Minor Dep. 116, 140, ECF No. 49-8.) Second, Plaintiff's separation notice is dated May 28, 2015. (ECF No. 49-6.) With no argument to the contrary, the Court finds that Plaintiff's position remained open while Defendant sought another applicant. Plaintiff has satisfied the fifth element of her prima facie case.
With these determinations made, the Court finds that there are disputed questions of material fact regarding Plaintiff's prima facie case for disability discrimination. However, if Defendant can demonstrate that, without factual dispute and as a matter of law, it acted based on legitimate, non-discriminatory reasons, the burden returns to Plaintiff to rebut Defendant's proffered reasons as pretext. Whitfield, 639 F.3d at 260.
2. Legitimate, Non-Discriminatory Reasons for Defendant's Actions
Defendant submits that its legitimate, non-discriminatory reason for not renewing Plaintiff's contract was that she never returned-nor made a good faith attempt to return-to her job, and, therefore, she voluntarily quit. (ECF No. 57-1 at 13.) Plaintiff disagrees, arguing that the record shows that Defendant's proffered reason is false and thus pretextual. (ECF No. 61 at 19.)
Initially, the Court is not satisfied that Defendant has submitted undisputed legitimate and non-discriminatory reasons for not renewing Plaintiff's contract. As the Court has already found, there are numerous material issues in dispute concerning Plaintiff's return to work. Therefore, the legitimacy of Defendant's proffered reasons is also in dispute, which provides a basis to deny summary judgment. However, even if the Court assumes Defendant has carried its burden, based on the same disputed facts, the Court finds that Plaintiff *983 could demonstrate that its proffered reasons are pretext. Haley v. Cmty. Mercy Health Partners, Case No. 3:11-cv-232, 2013 WL 322493, at *18, 2013 U.S. Dist. LEXIS 11193, at *51 (S.D. Ohio Jan. 28, 2013) (A plaintiff can "prove pretext by showing that the defendant's proffered reasons 1) had no basis in fact; 2) were not the actual reasons for the defendant's actions; or 3) were an insufficient basis for the defendant's actions.") (citing Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds by Geiger v. Tower Auto., 579 F.3d 614 (6th Cir. 2009) ). Defendant's Motion for Summary Judgment as to Plaintiff's claim for disability discrimination is DENIED .
B. Failure to Accommodate
Plaintiff's final claim that requires attention is one for failure to accommodate. The ADA's definition of "discrimination" includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless [doing so] would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A) ; see also Kleiber v. Honda of Am. Mfg., 485 F.3d 862, 868 (6th Cir. 2007). Because failure to accommodate claims "necessarily involve direct evidence (the failure to accommodate) of discrimination[,]" the McDonnell Douglas burden-shifting framework is inapplicable. Kleiber, 485 F.3d at 869. To establish a claim for failure to accommodate, a plaintiff "must show: (1) [s]he is disabled; (2) [s]he is otherwise qualified for the position, with or without reasonable accommodation; (3) [Defendant] knew or had reason to know of [her] disability; (4) [s]he requested an accommodation; and (5) [Defendant] failed to provide the necessary accommodation." Arthur v. Am. Showa, Inc., 625 Fed. App'x 704, 709 (6th Cir. 2015).
As an initial matter, the Court notes the odd posture of the arguments presented herein. Defendant mentioned Plaintiff's failure to accommodate claim only in passing in its Motion for Summary Judgment. (See ECF No. 57-1 at 12-13.) Based on the Court's interpretation of those mentions, Defendant presents two arguments. First, it appears to contend that, because Plaintiff was not disabled on January 19, 2015, she did not require an accommodation. (Id. at 12.) Second, Defendant asserts that Plaintiff made no attempt to return to work and thus cannot now claim that Defendant failed to accommodate her. (Id. at 12-13.) However, the Court has already found that there are disputed issues of material fact as to both arguments. Thus, neither entitles Defendant to summary judgment.
In her Response, however, Plaintiff argues that Defendant failed to engage her in the interactive process and that her requested accommodation (medical leave) became ineffective and thus unreasonable when Defendant did not allow her to return to her previous position. (ECF No. 61 at 12-13.) In its Reply, Defendant argues that an employer will not be liable under the ADA when it engages with an employee who refuses to participate in good faith or who withheld essential information, as, it contends, Plaintiff did here. (ECF No. 65 at 2-3.) In support of its position, it then recites the disputed facts concerning Plaintiff's attempt to return to work and her application for disability benefits. (Id. at 2-5.) Defendant also argues that it provided her the only accommodation she requested-medical leave. (Id. at 1-2.) Therefore, according to Defendant, it is entitled to summary judgment based on these arguments.
*984 Because Plaintiff put these issues on the table, and Defendant had a chance to respond, the Court will construe Defendant's arguments in its Reply as made in the alternative. Even so, the Court finds that Plaintiff's claim survives.
To begin, the ADA's regulations provide that "it may be necessary for the [employer] to initiate an informal, interactive process with the individual with a disability ... [to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). "[T]he interactive process is mandatory, and both Parties have a duty to participate in good faith." Kleiber, 485 F.3d at 871. "When a party obstructs the process or otherwise fails to participate in good faith, 'courts should attempt to isolate the cause of the breakdown and then assign responsibility.' " Id. (quoting Bultemeyer v. Fort Wayne Cmty. Sch., 100 F.3d 1281, 1285 (7th Cir. 1996) ).
Both Parties blame each other for the breakdown. However, as Defendant concedes in its Reply (and as the Court has previously highlighted), there are genuine issues of material fact concerning Plaintiff's communication with Defendant regarding her request to return to work. Given that it is inappropriate for the Court to gauge credibility at summary judgment, Kroll v. White Lake Ambulance Auth., 763 F.3d 619, 623 (6th Cir. 2014), the Court cannot make a determination as to who caused the breakdown and thus cannot apportion fault.
As to whether Defendant failed to provide a reasonable accommodation, the Parties' arguments do not actually conflict. Defendant asserts that Plaintiff's request for an accommodation consisted only of medical leave, which it provided. (ECF No. 65 at 1-2.) Plaintiff concedes that she requested leave as an accommodation, but argues that Defendant's failure to return her to her previous position-after it had provided the accommodation-rendered the accommodation ineffective and thus unreasonable. (ECF No. 61 at 11-13.) Therefore, the only question for the Court is whether Plaintiff was entitled to be returned to her position after her medical leave.
The Court is persuaded by the Equal Employment Opportunity Commission's ("EEOC") Guidance on this point. It provides that "[a]n employee with a disability who is granted leave as [a] reasonable accommodation is entitled to return to his/her same position unless the employer demonstrates that holding open the position would impose an undue hardship." Revised Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans With Disabilities Act (October 17, 2002); see also Lee v. City of Columbus, 636 F.3d 245, 256 (6th Cir. 2011) ("The [EEOC] Enforcement Guidance, while non-binding, 'constitute[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' ") (quoting White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 812 (6th Cir. 2004) ). The Guidance also states that an employee cannot be penalized for work missed while taking leave as a reasonable accommodation. Id.
Both Parties agree that medical leave was the reasonable accommodation requested, and they both agree that it was granted. Defendant does not argue that holding Plaintiff's position open would have posed an undue hardship, and, indeed, the evidence shows that Defendant did hold her position open. Therefore, the Court finds that Plaintiff was entitled to return to her job once her accommodation ended. However, because there is conflicting evidence regarding the Social Security *985 application, Defendant's Motion for Summary Judgment is DENIED .
CONCLUSION
Based on the foregoing, the Court DENIES summary judgment to both Parties.
IT IS SO ORDERED, this 5th day of July, 2018.

Plaintiff also alleged state law causes of action for breach of contract and fraud. (ECF No. 1 at 13-14.) However, she conceded those claims at summary judgment. (ECF No. 61 at 2.)

As is noted infra, however, Defendant provided no argument concerning Plaintiff's retaliation claim under the FMLA or her interference and retaliation claims under the ADA. Therefore, they all remain pending for trial.

Defendant agrees for the purposes of this Order that Plaintiff's FMLA leave began on October 9, 2014 (ECF No. 55 at 8); therefore, certain unnecessary facts regarding the initiation of her leave are omitted.

This appears to be in contravention of Defendant's FMLA policy, which provides that the director of schools "shall notify the employee within two (2) business days" that the other forms of leave entitlements shall run concurrently with FMLA once requested leave qualifies for FMLA. (Id. at ¶ 8.)

In addition, when Minor received a request for FMLA leave from employees, her practice was to input a designation of "FMLA" into Defendant's "Aesop" attendance system that same day. (Id. at ¶ 24.) However, Defendant's Aesop attendance records for Plaintiff, printed on April 17, 2015, do not cover any dates beyond October 27, 2014, and only designate FMLA leave for October 9-10 and 13-16, 2014. (Id. at ¶ 25.)

It is a little unclear when Plaintiff actually submitted this application. Defendant states that the application was submitted on December 11, 2014, and Plaintiff does not dispute that date. However, the document provided by Plaintiff states that her application was completed on December 29, 2014. (See ECF No. 50-9 at 9.) Resolution of this discrepancy is not material to the outcome of this Order.

Plaintiff's medical provider from that time completed a discharge summary affirming that Plaintiff's treatment ended on January 15, 2015, and she agreed that Plaintiff could return to work on January 19, 2015. (Id. at ¶ 38-39.)

Defendant's FMLA policy states that an employee shall be restored to the same position or an equivalent position, but it gives no explanation concerning how an employee is to be restored or whether the employee must provide Defendant a certification of fitness to return to work before returning. (ECF No. 48-2 at ¶ 9.)

The affidavit actually states that Watkins does not recall receiving a call from Plaintiff on September 18, 2014. (ECF No. 55-11 at 2.) However, both Parties seem to assume that the date should read January 18, 2015. Therefore, the Court does as well.

Plaintiff also alleges that she never received any information from Defendant concerning her responsibilities or obligations under the FMLA. (Id. at ¶ 23.) Defendant disputes this allegation, stating that her responsibilities were set forth in the board's policies.

The separate matter eventually culminated in Plaintiff's now-abandoned state law claims in this case. Because those claims have now been abandoned, most of the details of the separate matter are not germane to this Order.

An eligible employee is one who "has been employed ... (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2). Plaintiff's eligibility has not been challenged by Defendant. Therefore, the Court assumes she is an eligible employee.

Plaintiff also alleged that she left voice messages for Superintendent Teague, which Defendant does not refute with any evidence.

The Court is unmoved by Defendant's dubious position that the letter does not exist, in contravention of its own employee's testimony that she received it. Defendant cites circumstantial evidence that goes to Minor's credibility in challenging her testimony. However, credibility determinations are not appropriate at the summary judgment stage.

In what the Court interprets as an effort to discredit Plaintiff generally, Defendant also directs the Court's attention to a Social Security Disability form Plaintiff filled out on February 5, 2015. (ECF No. 55-13.) In a box on the form, Plaintiff inaccurately stated that her last day of work for Defendant was October 3, 2014, even though she actually began FMLA leave on October 9, 2014. (Id. at 2.) The form offers no other support for any of Defendant's arguments. Because the Court does not weigh evidence or assess witness credibility at summary judgment, the form is of no use to Defendant here. Kroll, 763 F.3d at 623.

Plaintiff admits that her mental health problems "regressed" in April 2015 due to Defendant's actions. Being that regress means to "return to a former or less developed state," though, the Court interprets Plaintiff's argument to be that her mental health was improved at some point prior to the April appointment, but had declined by the time of the appointment. See Regress, New Oxford American Dictionary, (3d ed. 2010).

Notably, this argument flies in the face of the previous assertion that Plaintiff was not actually disabled.